STATE v. HARRY HUGH POPE.

(Filed 13 April, 1960.)

**1. Criminal Law § 99—**

On motion to nonsuit, the evidence must be considered in the aspect most favorable to the State.

**2. Criminal Law § 101—**

Circumstantial evidence is sufficient to overrule nonsuit if its tends to prove the fact of guilt, or reasonably conduces to such conclusion as a fairly logical and legitimate deduction. It is insufficient if it merely raises a suspicion or conjecture in regard thereto.

**3. Homicide § 20— Evidence held insufficient to show that death of the deceased was the result of any act on the part of defendant.**

Evidence tending to show that defendant, in a drunken condition, was driving his automobile on the public highways with his girl as a passenger, that about a week prior thereto she had informed him "she was going to break up with him", that some three weeks prior to the occasion in question he had stated he was going to take her to the military reservation where he was stationed and she had tried to stop the car

by putting her foot on the brake pedal, that on the night in question he was seen dragging a body along a highway toward where his car was parked at the entrance of a parking lot, and that the girl had died from a head injury of a type caused when a moving head suddenly strikes an object, with further evidence that there was no damage to the car or *indicia* that it had been in an accident or a collision, *is held* insufficient to be submitted to the jury and sustain a conviction of manslaughter, since the evidence leaves in mere conjecture whether the deceased fell or attempted to jump from the car or whether defendant struck her or shoved her from the vehicle.

APPEAL by defendant from *Burgwyn, E. J.,* October "A" Criminal Term, 1959, of WAKE.

Defendant was tried upon a bill of indictment which charged that on 9 August 1959 he did feloniously, wilfully and of his malice aforethought, kill and murder Mary Lee Duncan.

Plea: not guilty.

Verdict: guilty of involuntary manslaughter.

Judgment: imprisonment for not less than three nor more than five years.

Defendant appealed and assigned errors.

*Attorney General Bruton and Assistant Attorney General Hooper for the State.*

*Arendell, Albright and Green and Jordan, Dawkins and Toms for the defendant.*

MOORE, J.  Defendant assigns as error the denial of his motion for nonsuit at the close of all the evidence. In determining whether or not the evidence was sufficient to make out a *prima facie* case of unlawful homicide it is necessary to review the facts and consider them in the aspect most favorable to the State. *State v. Ritter,* 239 N.C. 89, 79 S.E. 2d 164.

The evidence is summarized as follows:

The incidents herein related took place in or near the City of Raleigh. Defendant is thirty years of age and at the time of the indictment was in military service. He became acquainted with Mary Lee Duncan, age nineteen, in May 1959. He visited her in Raleigh every weekend thereafter until the time of her death. They had discussed marriage.

About three weeks prior to 9 August 1959 they had an argument. They and another couple were riding in defendant's car. Mary asked defendant to take her home. He refused and stated he was going to take her to Fort Bragg. He began to drive in that direction and she

tried to stop the car by putting her foot on the brake pedal. He slapped her. He was drunk at the time.

About a week before her death Mary informed defendant "she was going to break up with him."

About 10:00 P. M. on 8 August 1959, Saturday night, they met by prearrangement at the Carolina Pines dance club. Her sister and a number of their mutual friends were present. Most of the evening Mary and defendant sat at a table and did not dance. Defendant and a friend had a quantity of vodka. Mary took at least one drink. Defendant was drinking; he was "probably 'high.'" He tried to "pick an argument" with a male dancer. When the dance was over at midnight defendant sat at the table for awhile, then went to the ladies powder room and was asked to leave the club. He and Mary left together and rode in defendant's car to a drive-in where their friends had gone. Defendant's automobile was a 1959 Cadillac, color blue with a light colored top. They remained at the drive-in a short while. Mary spoke to her sister. Mary was in the front seat with defendant, the window of the car was down, she was "right at the window" and had her hands on the door. She and defendant left about 12:30 after agreeing to meet their friends at the home of one of them.

About 1:00 A. M. the witness, Robert Hamilton, was driving along old Highway 70 toward Garner, at a point about 3½ to 4 miles distant from the drive-in above referred to. His wife and children were with him. They saw a man dragging a body "along in the ditch alongside the highway" at a point about 60 to 70 feet from the entrance to a junk yard. ". . . (h)e had hold of two of the limbs, like arms or legs," and they were bare. Nearby on the right side of the highway was a Cadillac of the style and color of defendant's car. The man was near the rear fender of the Cadillac; he was not identified at this time. Hamilton drove by, turned around and returned to the scene about two minutes later. At this time the Cadillac was in the entrance to the parking lot of the junk yard, facing the highway. A body was lying on the ground parallel to the Cadillac and on the opposite side from the witness. Hamilton could not determine whether it was a man or woman; he could only see an arm and leg. The man was now in plain view in the headlights of Hamilton's car; he was the defendant: Defendant walked to the back of the car, stood there a minute, then got into the Cadillac and it began to move in the direction of the witness. The body was still on the ground and was not moving. Hamilton came to Raleigh and reported the matter to a police officer. On his way home he was followed for some distance by a blue Cadillac. When he passed the junk yard the defendant, automobile and body

were gone. The next morning, accompanied by police, Hamilton returned to the scene on the Garner Road. They found defendant's billfold. Near the point where defendant had first been seen there was a pool of blood about 15 inches in diameter. There was another, smaller bloody spot at the driveway to the parking lot.

About 4:50 Sunday morning defendant stopped his automobile in an alley in the City of Raleigh near a police car. He stated to the officer, "Sir, my girl friend is dead." Mary's body was found in the front seat of defendant's car with her head toward the steering wheel. There was blood on both doors of the car, the back seat, the floor and the back of the driver's seat. Defendant's bloody shirt and a partially empty bottle of vodka were found in the car. There was no indication of an accident involving the car; it was undamaged. Defendant was sober, with only a faint odor of alcohol on his breath. He was highly nervous and suffered from nausea during the morning.

Defendant gave the following version of the occurrence: He thought she had jumped or fallen from the automobile. He did not remember anything from the time they left the dance until he discovered suddenly she was not in the car. He picked her up at a gravelly place and put her on the front seat of the automobile. At the time "he didn't know she was hurt that bad." He passed out and didn't remember anything else. When he woke up he was on the south side of town and discovered she was dead.

Dr. Lineberger, a medical expert, specializing in pathology, did a post-mortem examination of deceased's head and brain. There was a wound on the back of the head. There were two lacerations. The larger laceration was on the left posterior of the scalp; the other was just to the right of the midline. There was a 5 or 6 inch fracture at the rear of the skull. In the Doctor's opinion the cause of death was brain injury. "Most extensive or obvious brain damage was to the front part of the brain . . . . the site of the fracture being opposite the brain damage." This was "a countre-coupe type of injury." In this type of injury "the brain damage is opposite the point of impact. This type of injury may occur when the head is in motion and strikes an object suddenly, then the brain reverses and goes in the opposite direction from where the head has come." Tests showed deceased had been under the influence of alcoholic beverages. Examination disclosed no sexual attack.

The State's evidence of the corpus delicti is circumstantial. The true test of its sufficiency is "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises

a suspicion or conjecture in regard to it, the case should be submitted to the jury." *State v. Simmons*, 240 N.C. 780, 785, 83 S.E. 2d 904, quoting from *State v. Johnson*, 199 N.C. 429, 154 S.E. 730.

The question here is what conduct, if any, on the part of defendant caused the injury to and death of the deceased? There is ample evidence that defendant was operating a motor vehicle on the public highways while under the influence of intoxicating liquor. But there is a total lack of evidence that this circumstance was the proximate cause of the death of deceased. *State v. Mundy*, 243 N.C. 149, 153, 90 S.E. 2d 312. There was no accident or collision. Did the defendant assault or strike deceased? Did he shove her from the car? To answer these questions in the affirmative would be to engage in pure speculation. The only evidence of cause of injury comes from defendant. He suddenly discovered that deceased was out of the car. He does not know whether she jumped out or fell out. The facts related by the witness Hamilton, the physical facts at the scene on the Garner road and the medical evidence is consistent with the theory that for some reason she fell from the car. The type of injury she sustained, according to the medical expert, ordinarily results when the head is in motion and meets resistance. To be sure there are some very suspicious circumstances consistent with guilt, but when all are considered, and when defendant's explanation is discarded, the cause of injury is left to surmise.

Defendant's demurrer to the evidence should have been sustained. As regrettable and tragic as is the death of this young lady in the early bloom of womanhood, we cannot in justice sustain defendant's conviction upon the evidence adduced.

Reversed.