STATE OF NORTH CAROLINA v. DONALD LEE GRIFFIN.

(Filed 20 March 1968.)

**1. Homicide § 6—**

Any unjustifiable and reckless or wanton use of a firearm which jeopardizes the safety of another is unlawful, and if an unintentional killing results, it is an unlawful homicide.

**2. Homicide § 20—**

The State's evidence tended to show that defendant had been drinking during the day, that he and his wife played with a pistol by twirling it and throwing it to each other, and that while the wife was sitting on her husband's lap the pistol, which the wife was twirling around her finger, fired, fatally wounding the wife. *Held:* The evidence, taken in the light most favorable to the State, shows only an accidental killing, and defendant's motion for nonsuit was improperly denied.

APPEAL by defendant from *McLean, J.*, 4 September 1967 Criminal Session of GASTON.

Defendant was tried upon a bill of indictment which charged him with the murder of his wife, who died from a pistol wound. The solicitor did not seek a verdict of murder in the first degree. The verdict was "guilty of involuntary manslaughter."

The evidence for the State tended to show: On the evening of 30 December 1966, about 6:30 p.m., defendant and his wife were at home watching TV. During the afternoon defendant had consumed 4-5 beers and a fourth of a pint of liquor, and the two had played with a .22 caliber pistol, twirling it and throwing it at each other. Mrs. Griffin had paid $10.00 for the gun and had given it to her husband as a Christmas present. Just before she was shot, at his request, she had brought defendant a drink, which she had mixed in the kitchen.

Defendant told the investigating officers that at the time his wife was shot, they were sitting in front of the television in a big, over-stuffed rocker across from the sofa in the den. Mrs. Griffin was sitting on defendant's lap, and they were taking turns twirling the gun. At the time the gun fired, she had it on her finger. He was fondling her; she bent down to kiss him, and the gun discharged. He placed her on the sofa and told her to hang on until he could get help. She replied, "I think I can make it if you hurry." He ran next door, called an ambulance, and returned with some of the neighbors, from whom he sought assistance.

When the officers arrived, they found Mrs. Griffin sitting in an upright position with her head on the back of the couch. Defendant, who was in a state of shock, gave them the pistol and told them he had no objection to talking to them.

An autopsy revealed that a bullet had entered Mrs. Griffin's left chest "just below the clavicle in the midline at a slight upward angle." The course of the bullet was down between the clavicle and the first rib. After penetrating the left lung and the pulmonary artery, it went back and struck the 10th rib, where it lodged in the muscle. Death was caused by a massive hemorrhage into the left thorax.

Defendant and his neighbors told the police that he and Mrs. Griffin "were getting along fine." Defendant said that there had been no trouble between them that day; that neither was angry; and that he did not know why the gun went off.

At the close of the State's evidence, defendant moved for nonsuit. The motion was "allowed as to murder in the second degree and

manslaughter"; it was denied as to the charge of involuntary manslaughter.

Defendant's evidence tended to show: Defendant, a man of good character and reputation, has been employed at the same manufacturing plant for the past nine years. At the time of her death, Mrs. Griffin was 22 years old; defendant, 25. They had been married 4 years. Mrs. Griffin was shot on 30 December 1966 about 8:00 p.m. During the preceding 12 hours, both defendant and his wife had been drinking. He had had 6 beers and one-fourth of a pint of bourbon. Twice during the afternoon, they had played with the gun, each taking turns twirling it on a finger. Tiring of this, Mrs. Griffin had put the gun on the arm of the big chair in which defendant was sitting at the time she was shot. Thereafter, from 6:00 to 7:30 p.m., she had lain on the couch. About 7:30, at his request, she got up and mixed them a drink. About 8:00 p.m., she left the couch, where she had been sitting, and came over to kiss him. He was lying back in the big chair, and she "half-sat" on his lap. He was fondling her; she put her arms around him, bent to kiss him, and the gun went off. The last time he saw the gun it was on the right arm of the chair. He did not know it was loaded, and he could not explain why the gun discharged. He knew she was shot when he saw a red spot on her shoulder. He placed her on the couch and ran to the next door neighbor's house to telephone for an ambulance.

At the close of defendant's evidence, he again moved for judgment of nonsuit, and the motion was overruled. The jury's verdict was "guilty of involuntary manslaughter." From a prison sentence of not less than 4 nor more than 5 years, defendant appeals.

*T. W. Bruton, Attorney General and Dale Shepherd, Staff Attorney for the State.*
*Frank P. Cooke for defendant.*

SHARP, J. When the State undertakes a prosecution for unlawful homicide, it assumes the burden of producing evidence sufficient to prove that the deceased died as the result of a criminal act committed by the defendant. *State v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349; *State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908. Any unjustifiable and reckless or wanton use of a firearm which jeopardizes the safety of another constitutes a criminal act, *State v. Turnage,* 138 N.C. 566, 49 S.E. 913; and, if an unintentional killing results, it is an unlawful homicide. *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354; *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889; *State v. Hovis,* 233 N.C. 359, 64 S.E. 2d 564.

Defendant's first assignment of error presents the question whether the evidence, taken in the light most favorable to the State, was sufficient to support a finding that he was handling the gun in a culpably negligent manner at the time it fired and killed his wife. *State v. Honeycutt*, 250 N.C. 229, 108 S.E. 2d 485.

The brief for the State contains this statement: "[T]here was evidence of death occurring under mysterious circumstances, which could lead to the conclusion that it was perpetrated by culpable negligence." Conceding the truth of this assertion, there remains unanswered the question, whose was the culpable negligence? Did deceased herself cause the pistol to discharge when she "half-sat" on defendant's lap and on the arm of the big, overstuffed chair, where she had placed the weapon? Did it fire when she embraced defendant while holding the pistol in her hand? If not, did any act of defendant's cause the gun to fire? There is no evidence that he had the pistol in his hand when it fired or that he had touched it immediately before. Had deceased been shot while she and defendant were tossing the pistol back and forth, or when defendant was twirling it on his finger, an entirely different situation would be presented.

The evidence of both the State and defendant tends to show an accidental killing, and there is no evidence that it was defendant who caused the gun to discharge. His motion for nonsuit made at the close of all the evidence should have been allowed. *State v. Pope*, 252 N.C. 356, 113 S.E. 2d 584.

Reversed.