STATE OF NORTH CAROLINA v. JAMES BOBBY HARRINGTON

No. 124

(Filed 30 December 1974)

Homicide § 30— second degree murder — no submission of involuntary manslaughter proper

Evidence in this prosecution for second degree murder was insufficient to require submission of an issue as to involuntary manslaughter where the State's evidence tended to show an intentional shooting and where defendant's evidence tended to show an accidental discharge of the rifle, but tended to negate culpable negligence in defendant's handling of the rifle.

ON *certiorari* to review the decision of the Court of Appeals reported in 22 N.C. App. 473, 206 S.E. 2d 768.

Defendant was indicted for the murder of Willie Mae Evans on 24 March 1973. Prior to the commencement of his trial at 30 July 1973 Session of WAYNE County Superior Court before *Canaday, J.,* the State announced its election to place defendant on trial for murder in the second degree or "such lesser included offense" as the evidence might justify.

At trial, the State offered the testimony of Henry Harrington, defendant's brother; the testimony of investigating officers Coley and Locklair; a stipulation fixing the location of the three bullet wounds and identifying the bullet first discharged as being the cause of death; and defendant's .22 rifle from which the three bullets were discharged. Defendant testified but offered no other evidence.

The following summary reveals the evidence pertinent to a consideration of the legal question now presented.

Willie Mae Evans (Willie Mae) died Saturday, 24 March 1973, in the late afternoon. Death occurred in the trailer-home of defendant and was caused by a bullet discharged from the .22 rifle in the hands of defendant. This bullet was the first of three bullets discharged from defendant's .22 rifle. According to the testimony of Henry Harrington (Henry), defendant shot Willie Mae three times inside the trailer. Defendant testified the first bullet was accidentally discharged inside the trailer and that the second and third bullets were discharged after he had left the trailer and was 75 or 100 yards away.

Defendant's trailer-home was located some eight miles or more southeast of Goldsboro in a rural section known as Dudley. It was from 50 to 75 feet from the trailer of Gordon Greenfield. The area surrounding the two trailers was open land.

On Saturday, 24 March 1973, Henry and Willie Mae, who was living with Henry, were spending the day with defendant, defendant's wife and their two children. On previous Saturdays, Henry and Willie Mae had made similar visits. On this particular Saturday they arrived at defendant's trailer during the early morning hours. Greenfield drove Henry and Willie Mae, and defendant and his family, to Goldsboro. Purchases there included the purchase by Henry and by defendant of "a fifth of liquor" from the ABC store. Upon returning to the trailer, Willie Mae and Listine, defendant's wife, went into the kitchen area. Henry and defendant were in the living room talking and drinking the liquor. During this time, defendant got the .22 rifle from the bedroom and brought it (through the kitchen) into the living room. He had bought the rifle a month or so earlier. It had been used for target practicing in which Willie Mae had participated.

After the first "fifth" had been consumed, at Henry's suggestion defendant arranged with Greenfield to take them to LaGrange to buy the second "fifth." Henry testified that, upon their return, he, Willie Mae, defendant, and Listine, drank some of the second "fifth." Defendant testified he drank no part of the second "fifth" and that he had no drink after 11:30 a.m.

According to Henry's testimony, he and defendant got into an argument over who had paid or was supposed to pay the most for the liquor and, while such an argument was in progress, Willie Mae filled a Pepsi-Cola bottle with all or part of the liquor then on hand and went back into the kitchen. At that

time, defendant pointed the rifle at Henry's chest and said, "I'll shoot you." Henry's further testimony is stated in his own words as follows: "When Willie Mae heard him, she walked out of the kitchen and told him not to shoot. Willie Mae was a good ways from me at the time when she walked out of the kitchen. She was standing about in the kitchen door. When she came in the living room, she told him not to shoot. He jumped up and said, 'G—D—it, I'll kill you.' By that time he fired the rifle. He shot her in the shoulder. After he shot her the first time he shot her in the stomach then twice. The first time he shot her she was standing up. When he shot her the second time, she was falling then. When he shot her the third time, she fell and I caught her myself."

Investigating officers testified they arrived about 6:30 p.m.; that, inside the trailer, Henry was kneeling beside Willie Mae's body; that defendant and the rifle were at Greenfield's trailer; and that, in successive conversations, defendant stated (1) that Willie Mae, when engaged with him in target practicing, leaned over in front of the barrel of the rifle and shot herself; (2) that, while on the way to target practice, the rifle went off "when he picked it up and swung it around"; and (3) that he picked up the rifle and shot Willie Mae but didn't mean to do it. Their testimony included statements attributed to defendant to the effect that his argument with Henry related to who paid or was to pay the most for the liquor.

The testimony of defendant contradicted in many particulars the State's evidence and the statements attributed to him by the officers. He testified he had no quarrel with Willie Mae and didn't intend to shoot anybody. He testified he had the loaded rifle and was going out of the back door of the trailer to do some target practicing. Testimony of defendant, stressed as a basis for his contention, is quoted below:

"I had the rifle in my left hand; when I went on out the back door, going out the back door somebody called me and I come back up into the house into the kitchen. I don't know who called me. It was a man's voice. I was going to see who it was and there was a chair down there and I stumbled over the chair and the gun went off. I stumbled over a chair in the kitchen. I had the rifle in my left hand and it went off. When the gun went off the bullet hit Willie Mae up there around the shoulder. Willie Mae was going to fall to the floor so I throwed the rifle on the floor and helped to get her in the rocking chair."

In his charge, Judge Canaday instructed the jury to return either a verdict of guilty of murder in the second degree or a verdict of not guilty.

The jury returned a verdict of guilty of murder in the second degree and judgment imposing a prison sentence was pronounced. Defendant excepted and appealed to the Court of Appeals. The Court of Appeals found "No Error." Defendant then applied to this Court for *certiorari* for review of one question, namely, whether Judge Canaday should have submitted guilty of involuntary manslaughter as a permissible verdict. We allowed *certiorari* 8 November 1974 to consider this question. 286 N.C. 212, 209 S.E. 2d 317.

*Attorney General James H. Carson, Jr. and Assistant Attorneys General James E. Magner, Jr. and Claude W. Harris for the State.*

*Philip A. Baddour, Jr. for defendant.*

BOBBITT, Chief Justice.

The only question is whether there was evidence sufficient to require submission of guilty of involuntary manslaughter as a permissible verdict. The answer is provided by application of the well settled legal principles stated below.

"The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954) ; *State v. Foster,* 284 N.C. 259, 277, 200 S.E. 2d 782, 795 (1973).

The jurors were instructed to return a verdict of not guilty if the State failed to satisfy them from the evidence and beyond a reasonable doubt that defendant *intentionally* shot Willie Mae Evans and thereby proximately caused her death. Nothing in the State's evidence afforded a basis for submitting involuntary manslaughter as a permissible verdict. Our inquiry is whether defendant's testimony provided a sufficient basis therefor.

Assuming, as defendant testified, the first bullet resulted from an *accidental* discharge of the rifle, defendant would be guilty of involuntary manslaughter only if there were evidence

tending to show that such unintentional killing was caused by defendant's unjustified and wanton or reckless use of the rifle in such manner as to jeopardize Willie Mae's safety. *State v. Griffin,* 273 N.C. 333, 335, 159 S.E. 2d 889, 890-91 (1968); *State v. Moore,* 275 N.C. 198, 212, 166 S.E. 2d 652, 661-62 (1969); *State v. Wrenn,* 279 N.C. 676, 683, 185 S.E. 2d 129, 133 (1971).

Defendant's testimony was to this effect: He started out the back door to engage in target practice. A person in his trailer-home called to him. He turned and went back to find out what the caller wanted. In doing so, he stumbled over a chair in his trailer-home. This caused the accidental discharge of the first (lethal) bullet. This testimony tends to negate culpable negligence in defendant's handling of the rifle.

Defendant cites *Moore* and *Wrenn* in support of his contention. Suffice to say, the facts in evidence in each of these cases are quite different from the evidential facts in the present case.

Defendant's testimony being insufficient to provide a basis for submission of involuntary manslaughter as a permissible verdict, the decision of the Court of Appeals is affirmed.

Affirmed.