IDA MAE QUICK, ADMINISTRATRIX OF THE ESTATE OF DONALD GARY QUICK v. UNITED BENEFIT LIFE INSURANCE COMPANY, AND JILL QUICK

No. 1

(Filed 14 April 1975)

1. Insurance § 35— involuntary manslaughter of husband — right to life insurance proceeds — G.S. Chapter 31A

A wife who was convicted of involuntary manslaughter of her husband was not convicted of a "wilful" killing within the meaning of G.S. 31A-3(3)a and thus was not a "slayer" who is barred by G.S. Chapter 31A from receiving the proceeds of a policy of insurance on the life of the husband.

2. Insurance § 35— killing of husband — right to life insurance proceeds — common law

G.S. Chapter 31A did not wholly supplant the common law which prevents a beneficiary in a policy of life insurance whose culpable negligence caused the death of the insured from collecting the proceeds of the policy.

3. Insurance § 35— killing of husband — right to life insurance proceeds — admissibility of criminal conviction

In a civil action to determine the right of a beneficiary who has caused the death of an insured to receive the proceeds of his life insurance policy, the record of the beneficiary's conviction of a "wilful and unlawful killing" is admissible to establish the disqualification of the beneficiary to receive the proceeds under G.S. Chapter 31A; however, when the wrongdoer is not disqualified from receiving the insurance proceeds by G.S. Chapter 31A and the common law must be relied on for such disqualification, the record of a criminal conviction of the wrongdoer for a crime not amounting to a "wilful and unlawful

killing," such as a conviction for involuntary manslaughter, is not admissible, and it is necessary to prove at the trial the factual circumstances relating to the killing from which the court can determine the issue.

**4. Insurance § 35— involuntary manslaughter of husband — right to life insurance proceeds — disqualification under common law**

Evidence not objected to that defendant had been convicted of the involuntary manslaughter of her husband was sufficient to support the court's conclusion that defendant was disqualified under common law from receiving the proceeds of an insurance policy on the life of her husband.

APPEAL by plaintiff-administratrix Quick, pursuant to G.S. 7A-30(2), to review decision of Court of Appeals reported in 23 N.C. App. 504, 209 S.E. 2d 323 (1974) (opinion by Vaughn, J., Parker, J., concurring, Campbell, J., dissenting), reversing the judgment of *Herring, D.J.,* 17 June 1974 Session of CUMBERLAND County District Court.

This is a civil action for declaratory judgment to determine the ownership of ten thousand dollars ($10,000.00) in life insurance proceeds. The actual controversy is between defendant, Jill A. Quick, and Ida Mae Quick, adminstratrix of the estate of Jill A. Quick's deceased husband, Donald Gary Quick.

The facts, which are not in dispute, are set out in the judgment of the trial court as follows:

"I. That the defendant, Jill A. Quick, shot and killed her husband, Donald Gary Quick, on the 23rd day of September 1972.

"II. That on October the 24th, 1972, the Cumberland County Grand Jury returned a true bill of indictment against the defendant, Jill A. Quick, for murder, being case #72 CR 28998.

"III. That the defendant, Jill A. Quick, was brought to trial at the March 12th Session of the Cumberland County Superior Court and was convicted by a Cumberland County Jury on the 15th of March, 1973, of Involuntary Manslaughter.

"IV. That pursuant to said verdict of the Cumberland County Jury, the Judge presiding, COY E. BREWER, sentenced the defendant, Jill A. Quick, to serve not less than five (5) or no more than seven (7) years in the State

Prison to be assigned to the Department of Corrections, Women Division.

"V. That there was in effect at the time of the said killing or more particularly, on September 23rd, 1972, a life insurance policy, acquired by Donald Gary Quick, the decedent, in the amount of $10,000.00, naming the defendant, Jill A. Quick, his wife, as beneficiary under the said policy.

"VI. That this action for Declaratory Relief was instituted by the Administratrix, Ida Mae Quick, of the State of South Carolina, and the Ancillary Administrator, Lester G. Carter, Jr., of Cumberland County, North Carolina, both adjudicated to be duly appointed.

"VII. That the defendant, United Benefit Life Insurance Co., was named a defendant in this proceedings, but withdrew from the said case after an Order allowing it to pay the proceeds of the policy, in the amount of $10,000.00 dollars, to The Clerk of Superior Court of Cumberland County; . . ."

The judgment also recites the stipulation of counsel for both parties "that the only issue to be decided [was] whether or not, Jill A. Quick, [was] barred from taking the proceeds of the aforementioned insurance policy, under G.S. 31A."

"Upon the aforementioned findings of fact and stipulation of counsel," the court made the following conclusions of law.

"(1) That Involuntary Manslaughter is an unlawful and wilful killing of another person, as set out in G.S. 31A-3(3)a; and the court further concludes that the defendant, Jill A. Quick is a 'Slayer' within the meaning of said Statute.

"(2) That the act committed by the defendant, Jill A. Quick, was against the public policy of this State - that - 'no person should be allowed to profit by his or her own wrong'; the Court concludes that by virtue of its inherent power as set out in G.S. 31A-15, that, Jill A. Quick, is barred from taking the proceeds as beneficiary under the aforementioned insurance policy."

The court entered judgment that the Clerk of Superior Court pay the insurance proceeds held by him to the ancillary administrator.

·Defendant Quick appealed to the North Carolina Court of Appeals, which held (1) that a conviction of involuntary manslaughter is not a conviction of a "wilful and unlawful killing" within the meaning of G.S. 31A-3(3)a; and that defendant "Quick's conviction, therefore, does not make her a 'slayer' within the definition"; and (2) that "the General Assembly has elected to legislate in the subject matter of this controversy and that the policy so established supplants the common law rule which would not have allowed her to recover." 23 N.C. App. at 507, 209 S.E. 2d at 325.

Accordingly, the Court of Appeals reversed the judgment of the district court and remanded the case for entry of judgment consistent with its opinion. Judge Campbell dissented on the ground that G.S. 31A-15 is controlling and this was an unlawful act which bars any recovery by defendant Quick.

The plaintiff-administratrix appealed to this Court as a matter of right.

*Lacy S. Hair for plaintiff appellant.*

*Deborah G. Mailman for defendant appellee.*

COPELAND, Justice.

[1] The first question for decision is whether defendant Quick is a "slayer" as defined by G.S. 31A-3(3). If so, G.S. 31A-11 disqualifies her as a beneficiary under the policy.

G.S. 31A-3(3) provides:

" 'Slayer' means

"a. Any person who by a court of competent jurisdiction shall have been convicted as a principal or accessory before the fact of the *wilful and unlawful killing of another person; . . .*" (Emphasis supplied.)

The question, therefore, is whether the crime of involuntary manslaughter is a "wilful and unlawful killing" within the meaning of the above cited provision. A conviction of the crime of involuntary manslaughter establishes the commission of an "unlawful" act, punishable in the discretion of the court, not to exceed 10 years. G.S. 14-2; *State v. Stimpson*, 279 N.C. 716, 185 S.E. 2d 168 (1971). Thus, only the term "wilful" has significance.

The term "wilful" depends on the context in which it is used. 22 C.J.S. Criminal Law § 31(4) (1961). However, as used in criminal statutes, it generally means "the wrongful doing of an act without justification or excuse, *or the commission of an act purposely and deliberately in violation of law.* [Citation omitted.]" *State v. Arnold,* 264 N.C. 348, 349, 141 S.E. 2d 473, 474 (1965). (Emphasis supplied.) For the reasons stated below, we hold that "wilful" as used in G.S. 31A-3 refers to an "intentional" homicide.

N. C. Gen. Stats., Ch. 31A, enacted by Chapter 210, 1961 Session Laws, was based upon legislation submitted to the 1961 General Assembly by a Special Drafting Committee of the General Statutes Commission (hereinafter referred to as Committee). *See Special Report of the General Statutes Commission on An Act to Be Entitled "Acts Barring Property Rights"* (1961) (hereinafter cited as *Special Report*). This report stated that the Committee had "profited greatly from an outstanding and comprehensive" model disqualification act first proposed in 1936 by Mr. John W. Wade, Professor of Law, Harvard Law School. *See Special Report, supra,* at ii. Also, with specific reference to Article 3 of the proposed Chapter 31A ("Wilful and Unlawful Killing of Decedent"), the report stated that "[t]he proposed Model Act . . . has been substantially followed, as was done in 1941 in Pennsylvania." *See Special Report, supra,* at 11. For the complete Model Act, *see* Wade, *Acquisition of Property by Wilfully Killing Another—A Statuory Solution,* 49 Harv. L. Rev. 715, 753-55 (1936) (hereinafter cited as *Wade).* The disqualification statutes of both Pennsylvania and South Dakota are also based on Professor Wade's Model Act. *See* Chapter 88, Penn. Stats. Anno. (1972) ; Chapter 29-9, S. Dak. Comp. Laws.

Proposed section 31A-3(1)a was enacted unchanged by the 1961 General Assembly as G.S. 31A-3(3)a. In their comments to proposed section 31A-3(1)a, the Committee stated:

"The proposed statute, § 31A-3 defines the terms 'slayer,' 'decedent' and 'property'.

"*In subsection (1) it uses the term 'slayer' instead of felon or murderer and is limited to 'wilful and unlawful' killings. These latter words would prevent the statute's application to cases of involuntary manslaughter, justifiable or excusable homicide, accidental killing or where the slayer was insane.* It would include manslaughter if the killing

was intentional and unlawful [voluntary manslaughter]. . . . The definition of the term 'slayer' is very important because it signifies what kind of killing may disqualify one from acquiring property. The requirement that. the killing be wilful and unlawful isn't the only possible rule, but does seem a fair policy criterion." *Special Report, supra,* at 12. (Emphasis supplied.)

Section 1(1) of Professor Wade's Model Act is substantively identical to G.S. 31A-3(3)a. It provides as follows: "As used in .this Act: (1) the term 'slayer' shall mean any person who *wilfully and unlawfully* takes or procures to be taken the life of another; . . ." *Wade, supra,* at 721-22. (Emphasis supplied.) In his commentary on this particular provision, Professor Wade states:

"The definition of the term 'slayer' is particularly important, since it signifies what kind of killing disqualifies a man from acquiring property. The requirement that the killing be wilful and unlawful cannot be said to be the only possible rule; in fact, it 'is futile to attempt to arrive at a "true rule" by pure logic'. But a line must be drawn at some place. *Should a statute of this sort include manslaughter? The answer is doubtful, but it is believed that it should not, if the killing is involuntary.* If the wrong was not intentional, it is difficult to say as a matter of policy that the perpetrator should be prohibited from acquiring property." *Wade, supra,* at 722. (Emphasis supplied.)

Also, in an extensive analysis of Chapter 31A of the General Statutes, Professor W. Bryan Bolich, a member of the Committee, has made the following observations as to the definition of "slayer" as used in G.S. 31A-3:

"This, the principle definitorial section of the chapter, adopts the term 'slayer' instead of 'felon' or 'murderer' which occurs in a number of the statutes, and limits the bar of the chapter to a 'wilful and unlawful killing.' The object of the statute is to prevent profit through wrong, and any degree of wrong from murder down to misdemeanor might have been adopted as the basis of the disqualification.

"In selecting this degree of wrong as the one which disables a slayer from profiting by his crime through the acquisition of a proprietary benefit as.a result of his victim's death, this section utilizes the criterion adopted by a

majority of the statutes and common law decisions on the subject—an intentional criminal homicide. As an expression of public policy it seems a fair standard which requires the killing to be both unlawful and wilful. *This duality of requirement excludes any killing by a noncriminal act such as mere negligence, a homicide which was justifiable or excusable or one committed while the slayer was insane, and by any non-wilful crime, including involuntary manslaughter. As used, 'wilful' would seem to mean such an act or omission entailing criminal responsibility on the part of the actor. This should include all cases of murder and of manslaughter when the killing was intentional and unlawful.*" Bolich, *Acts Barring Property Rights,* 40 N.C.L. Rev. 175, 193-94 (1962) (hereinafter cited as *Bolich).* (Emphasis supplied.)

In this State involuntary manslaughter is defined as an unlawful killing without malice, without premeditation and deliberation, and "without intention to kill or inflict serious bodily injury." *State v. Wrenn,* 279 N.C. 676, 682, 185 S.E. 2d 129, 132 (1971). In short, it is an unintended homicide. *See, e.g., State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969) ; *State v. Griffin,* 273 N.C. 333, 159 S.E. 2d 889 (1968) ; *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). In many cases, the crime arises when the evidence tends to show that the actor's unlawful killing of the victim was caused by his unjustified and wanton or reckless use of a weapon in such a manner as to jeopardize the decedent's safety. *See, e.g., State v. Harrington,* 286 N.C. 327, 330-31, 210 S.E. 2d 424, 427 (1974), and cases cited. Other states generally define the offense as an unlawful killing in the commission of an unlawful act not amounting to a felony (unlawful act type of manslaughter) or in the commission of a lawful act without due caution or circumspection (the gross negligence type). *See, e.g.,* W. LaFave & A. Scott, *Criminal Law,* § 75, 571-602 (West 1972) ; Annots., 161 A.L.R. 10 (1946) ; 99 A.L.R. 756 (1935) ; 23 A.L.R. 1554 (1923). Thus, it would appear, that the crime of involuntary manslaughter is not a "wilful" killing within the meaning of G.S. 31A-3 (3) a.

The clearest pronouncement that we have been able to find on this question is *Prudential Ins. Co. v. Doane,* 339 F. Supp. 1240 (E.D. Pa. 1972). In that case, the court was called upon to interpret a Pennsylvania statute (based upon Wade's Model Act), which provided that "[t]he term 'slayer' shall mean any

person who participates, either as a principal or as an accessory before the fact, in the *wilful and unlawful killing of any other person.*" (Emphasis supplied.) The facts giving rise to that action were as follows.

Defendant Evelyn Doane shot and killed her husband, Isaac T. Doane, during a fight. *Mrs. Doane was acquitted of murder, but was convicted of involuntary manslaughter.* She did not appeal this conviction. Mrs. Doane was the beneficiary of two insurance policies issued by the Prudential Insurance Company of America on her husband's life. She was also the administratrix of his estate. Faced with inconsistent claims Prudential paid the death benefits into court and brought an "Interpleader action."

The court held: "Under Pennsylvania law, involuntary manslaughter is the *unintentional* killing of another without malice. [Citation omitted.] Hence, the Slayer's Act would not bar the receipt of insurance proceeds by one convicted of involuntary manslaughter." *Id.* at 1241-42.

[1] We hold, as did the Court of Appeals, that defendant Jill A. Quick was not a "slayer" within the meaning of G.S. 31A-3 (3) a. Hence, proof of her conviction of involuntary manslaughter does not, *per se,* disqualify defendant from receiving the insurance proceeds under G.S. 31A-11.

The question remains, however, whether the provisions of Chapter 31A of the General Statutes completely supplant the common law principle, heretofore recognized by this Court, that one should not be allowed to profit by his own wrong. In considering this question, the pertinent provision is G.S. 31A-15, which provides as follows:

"This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong. As to all acts specifically provided for in this chapter, the rules, remedies, and procedures herein specified shall be exclusive, and as to all acts not specifically provided for in this chapter, all rules, remedies, and procedures, if any, which now exist or hereafter may exist either by virtue of statute, or by virtue of the inherent powers of any court of competent jurisdiction, or otherwise, shall be applicable."

In their comments to proposed section 31A-15 (codified as G.S. 31A-15), the Committee made the following observations:

"This section specifically states that this Chapter is not penal in nature, *and does not purport to abrogate the common law or to cover every case of wrongful act that might bar property rights.*

"There is a doctrine that if legislation undertakes to provide for the regulation of human conduct in respect to a specific matter or thing already covered by the common law, and parts of which are omitted from the statute, such omissions must be taken generally as evidences of the legislative intent to repeal or abrogate the same. [Citation omitted.] And while a court might not construe this legislation to be all-embracing and thus to supplant completely the common law on the subject, [citation omitted], *this section preserves the common law, substantive and procedural, as to all acts not specifically provided for in this Chapter.* While this Chapter seeks to provide for the situations in which the slayer may benefit from the decedent's death, some situations of wrong will inevitably arise which are not so covered but should be in accordance with the stated policy to prevent one from profiting by his own wrong. *Thus the fact that this Chapter covers only certain acts of wrongfully killing does not necessarily preclude other wrongful acts from barring property rights by common law, such as involuntary manslaughter or an acquitted killer in some cases.* In such instances the constructive trust concept and other non-statutory remedies remain available under the terms of this Chapter." *Special Report, supra,* at 31-32. (Emphasis supplied.)

The views of Professor Bolich on this question are also noteworthy. Specifically, he states:

"While this chapter seeks to provide for the usual situations in which the slayer may benefit from the decedent's death, some cases of wrong will inevitably arise which are not so covered but should be in accordance with the stated policy to prevent one from profiting by his own wrong. *Thus the fact that this chapter covers only wilful and unlawful homicide does not necessarily preclude other wrongful killings from barring property rights by common law, such as an unintentional killing resulting from reckless*

*disregard for human life* or during the commission of a felony." *Bolich, supra,* at 221. (Emphasis supplied.)

Additionally, we observe that Professor Wade, in his comments on the Model Act, states that "[a]n earnest effort has been made in the proposed Act to take care of every situation in which the slayer may receive any benefit of any kind as a result of the decedent's death. But it is always possible, of course, that some situation may arise which is not expressly covered in Sections 3 to 11." He concludes, however, that as a result of Sections 15 and 2 of the Model Act, "the slayer will still be prevented from acquiring such benefit." *Wade, supra,* at 751. Section 15 of the Model Act is identical to the first full sentence of G.S. 31A-15. Article 3 of Chapter 31A has no provision similar to Section 2 of the Model Act.

Of course, it is a basic rule of statutory interpretation that the intent of the Legislature controls the interpretation of any statute. *See, e.g., Person v. Garrett,* 280 N.C. 163, 184 S.E. 2d 873 (1971); *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970); 7 Strong, N. C. Index 2d, Statutes § 5 (1968). Further, it is a familiar principle that statutes in derogation of the common law must be strictly construed. *See, e.g., Ellington v. Bradford,* 242 N.C. 159, 86 S.E. 2d 925 (1955); *McKinney v. Deneen,* 231 N.C. 540, 58 S.E. 2d 107 (1950).

[2] Applying these well-settled rules to Chapter 31A, Article 3, of the North Carolina General Statutes, we hold that G.S. 31A-15 preserved the common law both substantively and procedurally, as to all acts not specifically provided for in Chapter 31A, and that the Court of Appeals erred in holding that N. C. Gen. Stats. Ch. 31A wholly supplanted the common law which prevents a beneficiary in a policy of life insurance whose culpable negligence caused the death of the insured from collecting the proceeds of the policy.

It may be that at the time the parties stipulated that the only issue to be decided was whether defendant Quick is barred "under G.S. 31A" from taking the proceeds of the insurance policy, they were under the misapprehension that the decisive question was whether she was a *slayer* as defined by G.S. 31A-3(3). If so, their misapprehension is immaterial for the stipulation was one of law and therefore not binding upon the court. *In re Edmundson,* 273 N.C. 92, 97, 159 S.E. 2d 509, 513 (1968);

*Moore v. State,* 200 N.C. 300, 156 S.E. 806 (1931). It did not eliminate G.S. 31A-15 from the case.

[3] Under G.S. 31A-13, one conclusively establishes the disqualification of the "slayer" by introducing in evidence the record of the proceeding in which the beneficiary was judicially determined to be a slayer as defined by G.S. 31A-3(3). Thus, in a civil action to determine the right of a beneficiary who has caused the death of an insured to take the proceeds of his life insurance policy, the record of the beneficiary's conviction of a "wilful and unlawful killing" would be introduced and admissible in evidence, not to prove guilt, but to prove the conviction as a separate relevant fact which would of itself bar the beneficiary from acquiring or retaining the proceeds. No other evidence of the crime than the specified court record would be necessary, and evidence that the "slayer" was not in fact guilty of the crime would be both immaterial and inadmissible. *See Special Report, supra,* Comments under proposed section 31A-13, 29-30.

In contrast, if the party seeking to disqualify the beneficiary cannot proceed under Chapter 31A—as when the jury in the criminal proceeding finds the wrongdoer guilty of involuntary manslaughter—then his only remaining remedy is to proceed under the common law. In this type of action, G.S. 31A-13 has no applicability because the alleged wrongdoer has not been determined a "slayer" within the purview of G.S. 31A-3(3). G.S. 31A-13 is simply a statutory exception to the universal rule that the record of a conviction in a criminal proceeding is not admissible in a subsequent civil action to prove the guilt or innocence of the person tried. *See, e.g., Watters v. Parrish,* 252 N.C. 787, 115 S.E. 2d 1 (1960); *Swinson v. Nance,* 219 N.C. 772, 15 S.E. 2d 284 (1941); Stansbury, N. C. Evidence (Brandis Revision) § 143 (1973). *See also Tew v. Durham Life Ins. Co.,* 1 N.C. App. 94, 160 S.E. 2d 117 (1968), where the Court of Appeals applied this rule.

In *Trust Co. v. Pollard,* 256 N.C. 77, 123 S.E. 2d 104 (1961), a wrongful death action, this Court, in an opinion by Justice Parker (later Chief Justice), held that defendant's motion to strike allegations in plaintiff's complaint, said allegations to the effect that defendant had been convicted of the crime of manslaughter in a criminal prosecution for the murder of the intestate, should have been allowed because evidence in support

thereof would have been incompetent. *Id.* at 81-82, 123 S.E. 2d at 108.

However, for purposes of the case *sub judice,* the most relevant portion of *Pollard* is that the plaintiff contended that the record of defendant's criminal conviction was admissible by virtue of G.S. 31A-13 and -15. In rejecting this argument, the Court stated:

> "Plaintiffs call to our attention 1961 Session Laws, Chapter 210, and particularly Article 4, Sections 13 and 15 of the statute. This statute is entitled, 'Acts Barring Property Rights,' and states in Article 4, Section 15 'This Chapter . . . shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong.' It is plain and clear that this statute is not applicable to the present case.

> "Applying the general and traditional rule . . . that evidence of a conviction and of a judgment therein rendered in a criminal prosecution is not admissible in a purely civil action like the present case to establish the truth of the facts on which it was based, and as we have no statute to the contrary, the defendant has successfully carried the burden of clearly showing that the record affirmatively reveals that the allegations of . . . the complaint . . . are clearly irrelevant, in that plaintiffs cannot present in evidence upon the trial the facts there alleged, and that their retention in the complaint will cause him harm or injustice." *Id.* at 81-82, 123 S.E. 2d at 108.

*Cf. Moore v. Young,* 260 N.C. 654, 133 S.E. 2d 510 (1963) (opinion by Justice Bobbitt, later Chief Justice, holding that plaintiff's conviction of manslaughter was not a bar to his suit for damages arising from the same automobile collision).

In a common law proceeding to disqualify the alleged wrongdoer the party seeking the remedy will find it necessary to produce at trial the factual circumstances relating to the killing of the decedent from which the court can determine the issue.

[4] In this case neither party offered evidence to establish the facts which preceded defendant's shooting her husband. The case was decided upon the "admitted facts set out in the judgment," that is, that Jill A. Quick shot and killed her husband; that she was indicted for the "murder" of her husband; that subsequently

Quick v. Insurance Co.

she was found guilty of involuntary manslaughter; and that judgment had been imposed upon the verdict sentencing her to five-to-seven years imprisonment. As previously noted, the general rule is that such evidence is incompetent in a subsequent civil action, but this evidence was before the court without objection.

In this State, it is a well established rule that evidence admitted without objection, though it should have been excluded had proper objection been made, is entitled to be considered for whatever probative value it may have. *See* Stansbury, N. C. Evidence (Brandis Revision) § 27 (1973). "Where testimony sufficient if true to establish a fact at issue has been received in evidence without objection, a nonsuit cannot be sustained even if the only evidence tending to establish the disputed fact is incompetent." *Skipper v. Yow,* 249 N.C. 49, 56, 105 S.E. 2d 205, 210 (1958). *Accord, Reeves v. Hill,* 272 N.C. 352, 158 S.E. 2d 529 (1968).

Accordingly, applying the above legal principles to the instant case, we hold that the evidence before the trial court, whether it was competent or incompetent, was sufficient to support its conclusion of law No. 2 to the effect that under the common law of this State defendant Jill A. Quick was disqualified from receiving any insurance proceeds from the policy insuring her deceased husband's life. The trial court was justified in disqualifying Jill A. Quick since the killing, although unintentional, nonetheless resulted from her culpable negligence, that is conduct incompatible with a proper regard for human life. Culpable negligence proximately resulting in death comes within the purview of the common law maxim that no one shall be permitted to profit by his own wrong.

For the reasons stated herein, the judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals with directions that the cause be further remanded to the District Court of Cumberland County for reinstatement of the judgment of the trial court in accordance with this opinion.

Reversed and remanded.