STATE OF NORTH CAROLINA v. LAWRENCE FREDRICK COLLINS, JR.

No. 7719SC760

(Filed 7 February 1978)

1. Homicide § 30.3— involuntary manslaughter—sufficiency of evidence

The evidence was sufficient to raise an inference that decedent's death resulted from defendant's reckless or wanton use of a firearm and to support defendant's conviction of involuntary manslaughter where there was evidence tending to show that decedent refused to leave a tavern owned by defendant when requested to do so; while decedent engaged in an argument with a co-owner, defendant obtained a gun from beneath the bar; when decedent jumped up from his chair, defendant raised his hand in which he held the gun; decedent grabbed defendant's hand and the gun discharged; and defendant did not know a shell had been chambered in the gun and intended only to strike decedent with the gun.

2. Homicide § 15— involuntary manslaughter—evidence bolstering defense of accident

In a prosecution for the involuntary manslaughter of a customer in defendant's tavern, the trial court erred in the exclusion of testimony by defendant's witness that, approximately two months before the shooting, he chambered a round in the gun used by defendant, which was kept under the tavern bar, and left the gun half-cocked, since the excluded testimony tended to bolster defendant's claim that he was unaware that the gun had a shell "chambered," tended to explain why the gun would discharge in view of defendant's testimony that he did not have his finger on the trigger and intended only to strike deceased with the gun and not to fire it, and was thus relevant on the issue of whether defendant's use of the gun under the circumstances was reckless and wanton.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 5 May 1977 in Superior Court, ROWAN County. Heard in the Court of Appeals 19 January 1978.

The defendant was charged in a proper bill of indictment with the murder of Robert V. Honeycutt, Jr. Upon the defend-

ant's plea of not guilty, the State offered evidence tending to show the following:

The defendant, Lawrence Fredrick Collins, Jr., is the co-owner of "The Tavern," a bar located in Spencer, North Carolina. On the evening of 27 November 1976 the deceased, Robert Honeycutt, accompanied by a friend, went to defendant's bar to drink beer. The waitress at the bar informed them that because of a previous disturbance caused by Honeycutt, she would not sell them any beer. The two men became loud and boisterous and walked over and sat at a table with three girls. The waitress telephoned Hugh Sloop, the defendant's co-owner, and, at her insistance, Sloop and the defendant came to the bar. Immediately upon their arrival at the bar, Sloop walked over to the table where Honeycutt was sitting and told him that he would have to leave. The defendant walked behind the bar and then joined Sloop at Honeycutt's table. Honeycutt, refusing to leave the bar, jumped up from his chair. At this time the defendant raised his hand in which he held a gun, and the gun discharged, wounding Honeycutt in the head. Honeycutt died eleven hours later.

The defendant offered evidence tending to show the following: When the defendant arrived at "The Tavern" responding to the waitress' plea for assistance, he walked across the room to the bar to get a gun which was maintained by the cash register. The defendant had directed on previous occasions that the gun was never to be loaded and was to be used only to scare disruptive patrons. Without examining the gun to determine if it was loaded, the defendant placed it in his hip pocket and joined Sloop at Honeycutt's table. As the defendant got to the table, Honeycutt, who was arguing with Sloop stood up and pushed Sloop. He then grabbed the defendant on the left arm. The defendant reached into his pocked with his right hand and pulled the gun out intending to hit Honeycutt on the head. Honeycutt grabbed the defendant's hand and the gun; a struggle ensued, and the gun discharged, fatally wounding Honeycutt.

The jury found the defendant guilty of involuntary manslaughter. From a judgment imposing a sentence of 6 to 8 years imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Henry H. Burgwyn, for the State.*

*Gray and Whitley, by J. Stephen Gray; Weeks, Muse & Surles, by Cameron S. Weeks and T. Chandler Muse, for the defendant appellant.*

HEDRICK, Judge.

[1]   Defendant first assigns as error the trial court's denial of his motion for judgment as of nonsuit. The defendant was convicted of involuntary manslaughter. Involuntary manslaughter is the unintentional killing of a human being caused by the defendant's culpable negligence. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969). Our Supreme Court has recognized that

> with few exceptions . . . every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter. [Citations omitted.]

*State v. Foust*, 258 N.C. 453, 459, 128 S.E. 2d 889, 893 (1963). *See also Quick v. Insurance Co.*, 287 N.C. 47, 213 S.E. 2d 563 (1975); *State v. Crews*, 284 N.C. 427, 201 S.E. 2d 840 (1974). When the evidence is viewed most favorably to the State, it is sufficient to raise an inference that Honeycutt's death proximately resulted from the defendant's reckless or wanton use of a firearm. The case was properly submitted to the jury on the lesser-included offense of involuntary manslaughter. *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971).

[2]   The defendant also contends that the trial court committed prejudicial error in its exclusion of a portion of the testimony of defense witness Bill Yates. On direct examination Yates testified that he knew both the defendant and the deceased, and that he had seen the pistol which fired the shot killing Honeycutt in September of 1976. Yates was then asked the following question: "What was the occasion for seeing the weapon at that time?" The State objected to the question and its objection was sustained. If the witness had been allowed to answer the question, he would have responded as follows:

That the 32 caliber pistol was kept under the bar at the cash register, and that at the latter part of August or the first part of September, 1976, I was going to be an employee of "The Tavern". I was with Miss Denton when she showed me the place. She told me about the pistol. I examined it, and chambered a round. Several days later, the same week, first night I worked at "The Tavern", I asked Miss Denton, if she knew how to use the gun. We were in the place by ourselves, and she told me she didn't know how to use it, as she was afraid to use it. I then told her that I would show her how to use the weapon, as she might need it sometime. I took the clip out first, ejected the cartridge that was in the chamber, and unloaded the clip. There were four shells in the gun. I took three out of the clip and laid them on the counter. I put the clip back on the gun, and gave it to Miss Denton to see if she could chamber a round. She could not. I put the four cartridges back into the clip, and put the clip back into the gun, then I chambered a round. I left the hammer cocked, and I eased off on the trigger, so that all Miss Denton would have to do would be to pick up the gun, pull the hammer back, and pull the trigger, and it was ready to fire. I subsequently saw the gun the following night, and didn't see it again until today. I figured that the pistol had been left the way I left it, because she was afraid of the gun. She and Miss Owen were the only two employees working at "The Tavern" at that time.

The defendant argues that the excluded testimony was relevant and material to his defense that his conduct under the circumstances was justified and was not reckless or wanton.

We agree that the excluded testimony of Yates was relevant and material to defendant's defense. This testimony tends to bolster defendant's claim that he was unaware that the gun had a shell "chambered." Furthermore, Yates' testimony that he left the gun half-cocked tends to explain why the gun would discharge in view of defendant's testimony that he did not have his finger on the trigger and intended only to strike the deceased with the gun and not to fire it. The excluded testimony is relevant to the issue of whether defendant's use of the gun under the circumstances was reckless and wanton.

The State argues that the testimony was too remote to be of probative value. We do not agree. Under the circumstances the interval between the time Yates chambered the shell and left the gun half-cocked and the time of the shooting goes to the weight to be given the testimony and not to its competency. *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965).

We hold that the court erred to defendant's prejudice by excluding Yates' testimony. Defendant has additional assignments of error which we need not discuss since they are not likely to occur again.

New trial.

Judges BRITT and WEBB concur.