Common Pleas Court of Hamilton County.

BARTHOLOMEW COOK, ADMR. V. WESTERN & SOUTHERN LIFE INSURANCE CO. ET AL.
(Two cases)

Decided December 8, 1932.

*Bauer & Bauer* and *A. D. Castellini,* for plaintiff.
*LeBlond, Morrissey, Terry & Gilday,* for administrator of estate of Arthur A. Heinzmann.

*Carl G. Werner,* for Norman Heinzmann, and as *amicus curiae.*

MATTHEWS, J.

These two cases are actions upon policies of insurance upon the life of Ruth Marie Heinzmann, deceased. The plaintiff in each case is the administrator of her estate, and the defendants are Insurance Companies and the administrator of the estate of Arthur A. Heinzmann, her deceased husband. The insurance company admitted liability upon its policy, but inasmuch as both administrators were making claims against it, and being in doubt as to which was entitled, it has paid the money into the hands of the clerk of this court to abide the decision in these cases.

A jury was waived and the causes submitted upon an agreed statement of facts. From this statement of facts it appears that Arthur A. Heinzmann and Ruth Marie Heinzmann were husband and wife. Two life insurance companies issued two policies for $1,000.00 each upon the life of Ruth Heinzmann, in which her husband, Arthur Heinzmann, was named beneficiary. These policies were in full force and effect on the 6th day of May, 1932, when Ruth Heinzmann died at the hands of her husband, Arthur Heinzmann. It appears there had been discord between Mr. and Mrs. Heinzmann for a long time and because thereof they had lived apart on several occasions. They separated in April, 1932, and thereafter did not live together. At that time their household goods and effects were sold by them and their home, which stood in their joint names, was leased to a tenant. Mrs. Heinzmann thereafter lived with her son by a former marriage, to whose home she removed her personal effects. It appears that she was happy and contented in her life at her son's home, but that her husband, Arthur A. Heinzmann, was not reconciled to this separation and continued to importune her to resume their married life and that she refused to yield to his importunity. On May 6th he telephoned her that he was ill and asked her to meet him. She consented to, and did, meet him and he seems to have induced her to take an automobile ride with him. The agreed statement shows that it was during this

automobile ride that Arthur A. Heinzmann killed his wife and left her body in a plowed field after having arranged her clothing in an orderly manner. Her throat showed deep indentations of finger nails and she had been shot through the chest. Where the bullet entered, her clothing was burned and powder stained. After he had killed his wife and disposed of her body as aforesaid, Arthur Heinzmann drove his automobile several miles to a point on West Fork Road, in this city, where his dead body was found in the automobile. His wife's hat, handkerchief and purse were in the automobile, as was also his revolver, containing four loaded cartridges and two that had been discharged. There was also a letter written by Arthur Heinzmann to Charles B. Terry, his attorney, in which he said:

"My dear Ruth died in my arms, cause agitated melachonlia, etc. My dear is in the first plowed field north of Keller and Miami Road, Hamilton County, Ohio. Kindly handle everything. Burial from Mack Johnson, McMillan street. Thanks.

A. Heinzmann.

P. S. All deeds were done by myself."

The agreed statement also shows that Arthur Heinzmann was in a highly emotional condition, that he had gone out with Ruth Heinzmann several times during their separation, that he professed to be extremely in love with her, and that he was under the care of a physician and being treated for extreme nervousness. His father had died while in Longview Hospital as a patient.

On this state of the evidence counsel are agreed that the insured was killed by the beneficiary. They draw different conclusions as to whether or not it should be held that he murdered her. That presents the first subject of inquiry.

A purpose or intent to kill is a necessary element of the crime of murder in this state. To have that purpose or intent there must be sufficient mental capacity for that purpose. However, it does not require a mind free from all influences of physical and nervous disorder. If there is sufficient intellect to distinguish between right and wrong and sufficient will power to choose between

them, the mental capacity to entertain the purpose or intent exists.

In a trial for murder insanity is an affirmative defense and the burden rests upon the accused to establish it by a preponderance of the evidence. Every person is presumed to intend the usual and natural consequences of his acts. There is also a presumption of sanity.

In the case of *State* v. *Austin,* 71 O. S., 317, it was held as stated in the second paragraph of the syllabus, that:

"The law presumes every person sane until the contrary is shown, and in a criminal case this presumption of sanity serves the state as the full equivalent of express proof until such time as it is made to appear by a preponderance of the evidence that the defendant was insane at the time of committing the crime alleged against him."

See also *State* v. *Hauser,* 101 O. S. 404, and *Rehfeld* v. *State,* 102 O. S. 431.

There is in the agreed statement nothing from which the court could draw a conclusion of insanity. Arthur Heinzmann had been treated for extreme nervousness and his father had been a patient in Longview Hospital. The agreed statement contains no recital of any abnormal action indicating a deranged mind and no opinion of either an expert or non-expert on the subject of his mental condition. The only conclusion the court can draw from these facts is that he tried to persuade his wife to return to him and upon her refusal to do so he intentionally and purposely killed her, and then to avoid facing the consequences of his act, committed suicide.

The case then presents the question of whether or not a beneficiary, who has murdered the insured, or his estate in the event of his death, can recover under the policies. This question, it seems to the court, is definitely decided in the case of *Filmore* v. *Metropolitan Insurance Co.,* 82 O. S., 208, the syllabus of which is as follows:

"1. The beneficiary in a life insurance policy cannot recover thereon where the death of the insured is caused by the intentional and felonious act of such beneficiary.

"2. In an action to recover upon a policy of life insurance brought by the person named therein as the beneficiary, an answer by the insurance company alleging that the plaintiff murdered the assured, states a defense,

such an averment, in legal effect, being tantamount to the allegation that the killing charged was intentional and felonious."

Counsel seek to distinguish *Filmore* v. *Insurance Co.*, *supra*, from the case at bar by pointing out that they represent the administrator of his estate and that to permit his estate to recover would not violate the rule that a person cannot be permitted to benefit by his own wrong. In this connection, however, it is to be observed that the only basis for the claim of the administrator of the estate of the beneficiary is found in the right or title that existed in that beneficiary at the time of his death. If he had no right or title it is difficult to see how on any theory his estate could have any greater right, and this is the view taken by the cases in other jurisdictions.

In the case of *Smith, Admr.* v. *Todd, Admr.*, 70 A. L. R., 1529 (155 S. C. 323) is reported a case almost identical with the facts in the case at bar. In South Carolina at the time there was a statute which provided that "no person who shall be convicted in any court of competent jurisdiction of unlawfully killing another person shall receive any benefit from the death of the person unlawfully killed, except in cases of involuntary manslaughter." The court held as stated in the syllabus that:

"Under the common law principle that no one may be allowed to reap a benefit from his own wrong, a beneficiary of a life insurance policy whose interest in the policy was a mere expectancy, and who murdered the insured, acquired no right or title to the proceeds of the policy.

"2. The common law rule that a beneficiary of a life insurance policy who murders the insured takes no title to the proceeds of the insurance is not abrogated by the enactment of a statute providing that no person who shall be convicted in any court of competent jurisdiction of unlawfully killing another person shall receive any benefit from the death of the person unlawfully killed, the effect of such statute merely being to extend or supplement the common law rule by making a conviction in the criminal courts a conclusive judicial determination as to the convict's status with respect to receiving any benefit from the death of the person unlawfully killed.

"3. The administrator of a beneficiary of a life in-

surance policy who murders the insured has no title to the proceeds of the insurance."

In the annotation to the above case are collected the authorities on all the points argued in this case. By an examination of the annotation it will be found that the authorities are in unusual accord on the proposition that the beneficiary who murders the assured forfeits all rights which he may have in or under the policy. At page 1543 the annotator says:

"Where the beneficiary feloniously kills the insured, the rule which forbids his taking under the policy applies so as to prevent one claiming through or under him from likewise taking under the policy."

Cases from many jurisdictions are cited in support of the rule and among others, the case of *Schmidt* v. *Insurance Co.*, 112 Iowa, 41, in which the court held in accordance with the rule in *Smith* v. *Todd, supra,* that the beneficiary who had murdered the insured forfeited his right and that the benefits under the policy reverted to, and became a part of the insured's estate.

At page 1543 of the annotation to *Smith* v. *Todd, supra,* the annotator says:

"As shown by the earlier annotations, it is generally held, subject to certain limitations, that although the beneficiary's right to recover under the insurance contract is forfeited by reason of the felonious killing of the insured by the beneficiary, the insurer is not thereby relieved of liability, but is liable to pay the proceeds of the contract to the insured's estate. This rule is supported by the later cases."

The author then cites cases in support of the announced rule and cases imposing limitations upon the rule relieving the insured when the beneficiary procures the insurance with the intention of murdering the insured, and where the beneficiary who committed the murder would be the sole distributee of the insured's estate. In harmony with these decisions are the following: *Polish National Alliance, et al* v. *Crowley,* 38 Ohio App. 327; *National Benefit Life Insurance Co.* v. *Davis,* 30 O. L. R., 270; 38 Ohio App. 454; *Insurance Co.* v. *Butts,* 16 S. W. (2d) (Ark. 184.)

It is urged, however, that the enactment of Section 10503-17, General Code, shows that the policy of this state, as determined in prior cases in harmony with the decisions in other jurisdictions, has been reversed. That section is as follows:

"No person finally adjudged guilty, either as principal or as accessory, of murder in the first or second degree, shall be entitled to inherit or take any part of the real or personal estate of the person killed, whether under the provisions of this act relating to the intestate's succession or as devisee or legatee, or otherwise under the will of such person."

It seems apparent from this section that it is not applicable to a beneficiary in an insurance policy. In the case of *Smith* v. *Todd, supra,* the court considered a statute in the language of this statute, excepting that it was broad enough to exclude the person unlawfully killing another from receiving any benefit of any sort by reason of the person's death. At pages 1537 and 1538, the court says:

"Applying that principle of construction here, we think the statute is readily and soundly susceptible of the construction that it was the legislative intent, not to abrogate or delimit the common law rule barring a beneficiary who murders the insured from taking under the policy, but to add to and extend that rule in an important particular not covered by the common law. By its express terms, as we have seen, the statute is limited in operative effect to a person 'who shall be convicted in any court of competent jurisdiction of unlawfully killing another person,' and its plain primary purpose is to make the fact of such conviction sufficient of itself to establish the legal status of a person so convicted with respect to receiving 'any benefit from the death of the person unlawfully killed.' There can be no doubt that the statute goes no further than to make such conviction, in and of itself, determinative of the status of the person convicted with respect to benefits receivable from the death of the person unlawfully killed.

"That, prior to the enactment of this statute, the conviction of a person in the criminal courts of unlawfully killing another did not establish and fix his status in that regard with respect to the vesting, enforcement, and transmission of civil rights derived from and based upon the death of the person unlawfully killed by him, is well settled."

It seems to the court that the above remarks are equally applicable to the Ohio statute.

Counsel also calls the court's attention to Section 10503-18, General Code, which provides:

"When the surviving spouse or other heir at law * * * dies within three days after the death of the decedent * * * the estate of the first decedent shall pass and descend as though he had survived such heir at law."

As the court views it, the section has no application to the facts of the case at bar. If it did have application its effect would be to award to the plaintiff the proceeds of these policies under their terms, making them payable to Arthur Heinzmann, if living, otherwise to the executors, administrators, or assigns of the insured. If this question were to be disposed of as though Arthur Heinzmann preceded Ruth Marie Heinzmann in death, the proceeds of the policies would be payable to the latter's administrator by the express terms of the policies.

For these reasons the court finds in favor of the plaintiff in both cases.