Benjamin Moore was killed by his paramour Daisy Mack. He had two policies of insurance with the Southern Life and Health Insurance Company amounting to $375, in which Daisy Mack was named as beneficiary. The insurance company deposited in the Registry of the Civil District Court the $375 and impleaded Daisy Mack and the heirs at law of the deceased, Rhona Moore, appearing through her tutor-ad-hoc, and Benjamin Moore's wife, Inez Moore, as widow in community.
There was judgment below in favor of Inez Moore and Rhona Moore and dismissing the claim of Daisy Mack and she has appealed.
It is the contention of the legal heirs that Daisy Mack, the named beneficiary, is disqualified under the well settled jurisprudence of this and other States to the effect that a beneficiary, who feloniously kills an insured, is not entitled to the proceeds of the policy. American National Life Insurance Company v. Shaddinger et al., La.Sup., 16 So.2d 889. However, if the killing was justified as having been done in self defense, the beneficiary may recover. National Insurance Company v. Turner, La.App., 174 So. 646.
The question here presented, therefore, is one of fact — was the killing of Benjamin Moore by Daisy Mack justified as having been done in self defense?
Daisy Mack was indicted for murder, tried and convicted of manslaughter in the Criminal District Court for the Parish of Orleans. A new trial was applied for and granted and the case against her nolle prossed.
A statement given by Daisy Mack to the police ten days after the killing is to the effect that on Saturday night, October 18, 1942, she and Moore were drinking beer in a saloon on the corner of Conti and N. Claiborne Streets; that Moore had given her $14.06 to "run the house"; that about 3:30 a.m. Sunday morning, Moore ran out of money and asked her for a dollar, which she gave him and which he promptly spent for more beer; that he asked for more money, but Daisy refused to give it to him; that they went to their home where Benjamin Moore became incensed because of her refusal to give him any more money and grabbed a vase from the mantel with the intention of striking her with it, whereupon she grabbed a butcher knife and stabbed him in the chest; that she did not intend to injure him fatally; that she left the dwelling immediately afterwards taking the butcher knife with her, which she later threw away in the grass at Bienville and Roman Streets and slept in a boxcar at Elysian Fields and St. Claude Streets the balance of the night.
There was an aged blind negro, who resided with Benjamin Moore and Daisy Mack, whose testimony greatly impressed the trial judge as appears by the following reasons for judgment which we find in the record:
"This case involves a question of fact only.
"After weighing the testimony, I am unable to accept as true Daisy Mack's version of the killing. On the contrary the blind negro, Cuff Matthews, in my opinion, correctly stated what happened on the morning of October 19, 1942.
"Cuff Matthews, while eighty-seven years of age and blind, painted a very clear picture of what happened, even though his eyes could not see. He impressed me with the fact that he told the truth.
"Daisy Mack became enraged when Ben Moore cursed her, and she picked up the knife and walked from the kitchen, where she was standing beside Cuff Matthews, into the bed room, where she stabbed Ben Moore. There was no long argument and struggle.
"Therefore there will be judgment in favor of Inez Moore, widow of Ben Moore, and their minor child, Rhona Moore. Proper judgment will be drafted accordingly."
There were no witnesses to the killing other than Daisy Mack and the blind man, Cuff Matthews, if he can be said to be a witness. We have read the evidence very carefully and we are unable to say that the *Page 372 
trial judge was mistaken in his conclusions of fact, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.