444 P.2d 762

**Ruth ROSE, Guardian of Harvey Lee Rose, a minor, Plaintiff-Appellee,**

v.

**Billie ROSE, Defendant-Appellant.**

**No. 8563.**

Supreme Court of New Mexico.

July 15, 1968.

Rehearing Denied Sept. 11, 1968.

Timothy P. Woolston, John V. Coan, Albuquerque, for appellant.

Emmett C. Hart, Tucumcari, for appellee.

## OPINION

NOBLE, Justice.

The executor of the estate of Thurman G. Rose, deceased, and the guardian of Harvey Lee Rose, minor son of the decedent, brought a declaratory judgment action in which Billie Rose and Mountain States Life Insurance Company of America were named defendants, seeking a declaration of the beneficiary entitled to the proceeds of a policy insuring the life of Thurman G. Rose, deceased. Billie Rose, the primary beneficiary named in the policy, has appealed from a judgment awarding the proceeds to the decedent's son, a contingent beneficiary named in the policy.

The trial court found that Thurman G. Rose and Billie Rose were married May 14, 1965. Mountain States Life Insurance Company of America issued its policy on September 15, 1965, insuring the life of Thurman G. Rose; Billie Rose, his wife, was named principal beneficiary and Harvey Lee Rose, a son, as contingent bene-

ficiary. The court made the following specific findings of fact:

"* * *.

"11. That on the 11th day of February, 1966, the defendant, Billie Rose, shot and killed Thurman G. Rose, without lawful excuse or justification.

"12. That said killing was unlawful and felonious.

"13. That on the 11th day of February, 1966, the defendant, Billie Rose, murdered Thurman G. Rose.

"14. That as a result of unlawfully killing Thurman G. Rose on the 11th day of February, 1966, the defendant, Billie Rose, was subsequently convicted of the crime of voluntary manslaughter."

The court then concluded:

"* * *.

"4. That Billie Rose murdered Thurman G. Rose on the 11th day of February, 1966.

"5. That Billie Rose, primary beneficiary under said policy, forfeited all rights to the proceeds of said insurance policy by her unlawful and criminal act in killing the insured, Thurman G. Rose.

"6. A beneficiary who unlawfully and feloniously kills the insured can thereby acquire no right or title to the proceeds of the policy enforceable in this Court.

"7. That Section 40A–2–10, N.M.S.A., 1953 is an extension or addition to the common law rule and does not abrogate the common law that a beneficiary may not recover by his or her own crime.

"8. That the conviction of Billie Rose of the crime of voluntary manslaughter is not conclusive upon this Court as to the unlawful and felonious killing committed by the defendant, Billie Rose.

"* * *."

It is thus apparent that the trial court concluded that, notwithstanding the conviction of the wife of voluntary manslaughter in the killing of her husband and, of course, her acquittal of both first and second degree murder, the court, in the civil proceeding for declaratory judgment, was not bound by the verdict in the criminal case but could make its own determination about the homicide. This the court did; it found as a fact that the defendant murdered her husband even though the court also found that she was only convicted of voluntary manslaughter. The determination that the wife had forfeited her right to the insurance proceeds was quite obviously based upon the common-law maxim that "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. * * *" Smith v. Todd, 155 S.C. 323, 152 S.E. 506, 70 A.L.R. 1529.

In adopting the common law as the rule of practice and procedure, § 21–3–3, N.M. S.A.1953, the Territorial Supreme Court as early as Browning v. Estate of Browning, 3 N.M. 659, 9 P. 677, said that it was intended to adopt the common law, or lex non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the constitution or laws of the United States or of this State, which are applicable to our conditions and circumstances, and which were in force at the time of the American separation from England. That doctrine has been reiterated by this court. Sellman v. Haddock, 62 N.M. 391, 310 P.2d 1045; Yeo v. Tweedy, 34 N.M. 611, 286 P. 970; Blake v. Hoover Motor Co., 28 N.M. 371, 212 P. 738. It is well settled in those jurisdictions applying the common law that, absent a contrary statute, a beneficiary in a life insurance policy who feloniously causes the death of the insured may not recover under the policy. See Annots., 70 A.L.R. 1539; 91 A.L.R. 1486. See also Reagan v. Brown, 59 N.M. 423, 285 P.2d 789.

Our legislature, however, has declared that the acquiring, profiting, or realizing benefits from the commission of a capital, first or second degree felony is contrary to the public policy of the State, and by

subsection B of § 2–10, ch. 303, Laws 1963 (§ 40A–2–10, N.M.S.A.1953) has provided:

"B. In all cases involving devises or bequests, or heirships under the laws of descent and distribution, or cotenancies, or future interests, or community estates, or contracts, whether of real, personal, or mixed properties, where a person, who, by committing murder and where such person is convicted of either a capital, first or second degree felony, and might receive some benefit therefrom either directly or indirectly, the common-law maxim to the effect that one cannot take advantage of his own wrong, shall control and be applied to the interpretation, construction and application of all statutes or decisions of this state in order to deprive and prevent him from profiting from such wrongful acts."

 The statute is not merely declaratory of the common law, nor is it a mere extension of or addition to the common-law maxim that a beneficiary may not profit by his own crime. If the legislature had intended it as merely declaratory of the common law, it would have been easy to have said that one who is convicted of feloniously causing the death of another shall not benefit therefrom, as did Kentucky, Mississippi, Oklahoma, Texas, and Utah. The legislature, by express and unambiguous language, prohibited only those convicted of murder from so profiting. In this instance, the legislative intent to limit the common-law maxim to one convicted of murder is clear and plain. See Reagan v. Brown, supra, where we held our statutes of descent and distribution, being plain and unambiguous and containing no provision for inheritance other than the death of the ancestor, operated to change the common-law maxim and permit a son to inherit his mother's estate even though he had been convicted of her murder. Smith v. Todd, supra, heavily relied upon by the plaintiffs, does not, in our view, support the plaintiffs' argument that the common-law maxim is not restricted by our statute to those seeking to benefit from murder. That decision is limited to a determination of what court has jurisdiction to determine whether the beneficiary in the policy did, in fact, unlawfully kill the insured. The legislature has clearly said that only one convicted of the murder of the insured may not receive the proceeds of decedent's life insurance.

 Nor can we agree with the district court that it, and not the court in the criminal proceeding, had authority to determine the question of whether Billie Rose did, in fact, murder her husband. The question of whether the person to whom the property would ordinarily go murdered the insured is one to be judicially determined. The legislature has seen fit to provide that that determination must be ascertained in a criminal proceeding in which the person who would have taken the property is charged with killing the insured. Hamblin v. Marchant, 103 Kan. 508, 175 P. 678, 6 A.L.R. 1403; Wilson v. Bates, 313 Ky. 333, 231 S.W.2d 39. Compare Smith v. Todd, supra.

 Other collateral issues are argued but they either are resolved by what we have said or found to be without merit. It follows that the case must be reversed and remanded with direction to the trial court to set aside the judgment heretofore entered and to enter a new judgment declaring that the defendant, Billie Rose, is entitled to the proceeds of the insurance policy in issue in this case.

It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.