**CALIFORNIA–WESTERN STATES LIFE INSURANCE COMPANY**

v.

**Edward SANFORD, Jr., Edward Sanford, III, Mobuta Sanford, and Kente Sanford.**

Civ. A. No. 80–3673.

United States District Court, E. D. Louisiana.

May 29, 1981.

Frederick R. Bott, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Madeleine Fischer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Edward Sanford, Jr.

John M. Landis, Stone, Pigman, Walther, Wittmann & Hutchinson, Lawrence L. LaGarde, Jr., New Orleans, La., for defendants Edward Sanford, III, Mobuta Sanford and Kente Sanford.

## MEMORANDUM AND ORDER

SEAR, District Judge.

On the evening of February 16, 1979, on a street in New Orleans, Edward Sanford, Jr. shot and killed his estranged wife, Jennifer, while the couple's three children watched from the backseat of a car. Sanford then shot himself, but survived the injury. He was arrested and prosecuted for his wife's murder in the Criminal District Court for the Parish of Orleans. After stipulating to the shooting, Sanford presented the testimony of a psychiatrist that he was insane during the commission of the crime. The prosecution did not present any witnesses. The court acquitted Sanford on grounds of insanity and committed him to the custody of a mental institution. *State of Louisiana v. Sanford*, No. 269–061–H (September 6, 1979).

By virtue of her employment with the Ralph M. Parsons Co., Mrs. Sanford held a policy of life insurance with California-Western States Life Insurance Co. ("Cal-Western"), No. G–3848, in the principal amount of $17,500 and for an additional $17,500 in accidental death and dismemberment benefits. Mrs. Sanford named her husband as the beneficiary of the policy.

Faced with potentially conflicting claims to the $35,000 in policy proceeds by Sanford and the three Sanford children,[1] Cal-Western commenced this interpleader action pursuant to Fed.R.Civ.P. 22 and 28 U.S.C. § 1332(a)(1) (1976)[2] to adjudicate the claimants' legal rights to the money. Cal-Western deposited the proceeds in the registry of the Court, and was subsequently granted summary judgment. Sanford has now moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).[3]

Sanford relies on La.Rev.Stat.Ann. § 22:613(D) (West Supp.1981) which states:

No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits thereunder accruing upon the death, disablement, or injury of the individual insured when said beneficiary, assignee, or other payee who [sic] is held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement or injury of the individual insured. Where such a disqualification exists, the policy proceeds shall be payable to the secondary or contingent beneficiary, unless similarly disqualified, or, if no secondary or contingent beneficiary exists, to the estate of the insured. Provided, that nothing contained herein shall prohibit payment pursuant to an assignment of the policy proceeds where such payment defrays the cost and expenses of the insured's funeral or expense incurred in connection with medical treatment of the insured. Provided, also, that nothing contained herein shall prohibit payment of insurance pro-

---

1. Under Louisiana law, if the beneficiary is disqualified from receiving the proceeds of a life insurance policy, the money reverts to the estate of the insured where, as here, no secondary or contingent beneficiary is named. La. Rev.Stat.Ann. § 22:613(D) (West Supp.1981).

2. Rule 22 provides in part:
   Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.

Under 28 U.S.C. § 1332(a)(1) (1976), the district courts may hear civil actions in which the matter in controversy exceeds $10,000 and is between citizens of different states.

3. Rule 12(c) provides that if on a motion for judgment on the pleadings matters outside of the pleadings are considered by the court, the motion is treated as one for summary judgment brought under Rule 56. Because in deciding Sanford's motion I have been presented with additional materials, I will treat it as a motion for summary judgment.

ceeds pursuant to a facility of payment clause, so long as such payment is not made to a beneficiary, assignee or other payee disqualified by this section.

Since under Louisiana law, one who commits a crime but is unable to distinguish right from wrong because of mental disease or defect may not be held criminally responsible for the offense,[4] Sanford argues that the acquittal of his wife's murder on grounds of insanity conclusively establishes his eligibility to receive the insurance proceeds under § 22:613(D). Sanford's children respond that while under the statute a criminal conviction bars a beneficiary from receiving insurance proceeds, an acquittal is not afforded the same conclusive effect, and argue that they are entitled to litigate the issue of Sanford's sanity in this proceeding.

Perhaps because § 22:613(D) was enacted only recently by the Louisiana legislature, see Acts 1979, No. 246, no reported decision has yet construed the statute. Furthermore, there are no Louisiana cases dealing with the right of a beneficiary to insurance proceeds after he is acquitted of the murder of the insured. Therefore, this motion presents a novel question of Louisiana law. Unlike federal appellate courts, this Court may not certify a question of Louisiana law to the state supreme court for its authoritative determination.[5] I must therefore derive the proper meaning of § 22:613(D) from the plain language of the statute, from existing Louisiana jurisprudence in this area, meager though it is, and from precedents of other American jurisdictions.

The common law has traditionally forbidden one to benefit from his own wrongful conduct. Thus, the rule evolved that a beneficiary who had intentionally and feloniously murdered the insured could not recover the proceeds of an insurance policy. *New York Mutual Life Insurance Co. v.*

*Armstrong,* 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997 (1886); *Reynolds v. American-Amicable Life Insurance Co.,* 591 F.2d 343 (5th Cir. 1979); *Tippens v. Metropolitan Life Insurance Co.,* 99 F.2d 671, 675 (5th Cir. 1938); Restatement of the Law, Restitution § 189 (1962); Annot., 27 A.L.R.3d 794 (1969); Couch on Insurance 2d § 27:149 (1960); W. Meyer, Life and Health Insurance Law § 11:26 (1972). Louisiana courts have adopted this rule. *American National Life Insurance Co. v. Shaddinger,* 205 La. 11, 16 So.2d 889 (1944); *Flood v. Fidelity & Guaranty Life Insurance Co.,* 394 So.2d 1311 (La.App.1981); *Provident Life & Accident Insurance Co. v. Carter,* 345 So.2d 1245 (La. App.1977); *Succession of Butler,* 147 So.2d 684 (La.App.1962), *application denied,* 244 La. 117, 150 So.2d 584 (1963); *Smith v. Southern National Life Insurance Co.,* 134 So.2d 337 (La.App.1961); *Davis v. Unity Life Insurance Co.,* 43 So.2d 67 (La.App. 1949); *Southern Life & Health Insurance Co. v. Mack,* 17 So.2d 370 (La.App.1944); *Hollander v. Good Citizens Mutual Benefit Association,* 193 So. 903 (La.App.1940); *National Life & Accident Insurance Co. v. Turner,* 174 So. 646 (La.App.1937). In order to cause a forfeiture of the proceeds, however, the killing had to be both intentional *and* felonious. If the beneficiary killed the insured in the course of self-defense, for example, he was still entitled to the insurance money. *Provident Life & Accident Insurance Co. v. Carter, supra; Southern Life & Health Insurance Co. v. Mack, supra; National Life & Accident Insurance Co. v. Turner, supra.* Similarly, if the beneficiary was insane at the time of the homicide, he was not criminally liable for his conduct, and therefore could not be disqualified from taking under the policy. *Restatement, supra,* Comment d; Couch, *supra,* § 27:155 at 704. *See Monroe v. First National Life Insurance Co.,* 19 La.App. 700, 141 So. 471

---

4. If the circumstances indicate that because of a mental disease or defect the offender was incapable of distinguishing between right or wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
La.Rev.Stat.Ann. § 14:14 (West 1974).

5. Under La.Rev.Stat. § 13:72.1(A) (West Supp. 1981) and La.Sup.Ct.R. 12, only the Supreme Court and the Courts of Appeals of the United States may certify questions of state law to the Louisiana Supreme Court.

(1932) (acknowledging that homicidal but insane beneficiaries may recover proceeds under a policy provision similar to the common law rule).

The parties in this case do not dispute these propositions of law. Instead, they disagree to what extent the common law rule has been changed by § 22:613(D). Sanford argues that the statute has abrogated the common law rule by making a criminal conviction the only basis for denying a beneficiary his insurance proceeds. This construction of § 22:613(D) would parallel that of La.Civ.Code Ann. art. 966 (West 1952) which disqualifies an heir from taking a decedent's property if convicted of the decedent's murder.[6] Louisiana courts have held that under article 966 an heir may be disqualified only if he was criminally convicted; even if he in fact committed the crime, the absence of a criminal conviction would preclude his disqualification as an heir under the article. *Sharp v. Sharp*, 228 La. 89, 81 So.2d 820 (1955); *Kilpatrick v. Pickett*, 307 So.2d 673 (La.App.), *writ refused*, 310 So.2d 853 (La.1975); *Succession of Medica*, 163 So.2d 425 (La.App.), *writ refused*, 246 La. 379, 164 So.2d 362 (1964). It could be argued that in enacting § 22:613(D), the Louisiana legislature intended to use the same standard for disqualifying murderous insurance beneficiaries as article 966 uses for murderous heirs. Certainly there seems little reason for treating the two groups differently.

But, unlike article 966, the word "conviction" does not appear in § 22:613(D); the statute simply refers to a "final judgment of a court of competent jurisdiction"

holding the beneficiary "criminally responsible" for the insured's death. Section 22:613(D) is subheaded "intentional acts exclusion," and the preamble to Acts 1979, No. 246 declares that the purpose of the statute is to prevent a beneficiary from receiving any insurance proceeds where he "intentionally contributes to the death, disablement, or injury of the individual insured." There is no indication in this statement that only beneficiaries criminally prosecuted and convicted for the insured's death are disqualified from receiving the insurance proceeds. Instead, a finding by a civil court in a wrongful death suit, or in an interpleader action such as the instant case, that the beneficiary intentionally and feloniously took the insured's life would constitute a "final judgment" precluding recovery. A criminal conviction is not an essential element of disqualification, as it is under article 966.

In addition, before § 22:613(D) was enacted Louisiana courts did not apply article 966 or the principle it embodies to cases involving insurance beneficiaries; indeed, in none of the Louisiana cases cited above adopting the common law rule was article 966 even mentioned. The courts in *American National Life Insurance Co. v. Shaddinger, Smith v. Southern National Life Insurance Co.*, and *Southern National Life Insurance Co. v. Mack* explicitly refused to treat the existence of a criminal conviction, or the absence thereof, as conclusive on the issue of criminal liability, although they permitted the criminal findings to be placed into

**6.** Article 966 provides in part:

Persons unworthy of inheriting, and, as such, deprived of the successions to which they are called, are the following:

1. Those who are convicted of having killed, or attempted to kill, the deceased; and, in this respect they will not be the less unworthy, though they may have been pardoned after their conviction.

Sanford does not contend that article 966 applies to this case. Generally, courts in other jurisdictions have declined to interpret statutes similar to article 966 as applying to proceeds of an insurance policy, restricting their application to successions.

See, e. g., *Continental Bank and Trust Co. v. Maag*, 285 F.2d 558 (10th Cir. 1960) (interpreting Utah statute); *Life Insurance Co. of Virginia v. Cashatt*, 206 F.Supp. 410 (E.D.Va.1962) (Virginia statute); *Carter v. Carter*, 88 So.2d 153 (Fla.1956) (Florida statute); *United Farm Bureau Family Life Insurance Co. v. Fultz*, 375 N.E.2d 601 (Ind.App.1978) (Indiana statute). But see *Huang Tang v. Aetna Life Insurance Co.*, 523 F.2d 811 (9th Cir. 1975) (applying California wills statute to insurance policy), *Noller v. Aetna Life Insurance Co.*, 142 Kan. 35, 46 P.2d 22 (1935) (Kansas statute).

evidence.[7] In each of these cases the court made its own determination of the circumstances surrounding the insured's death under the principle of the common law rule. Thus, before § 22:613(D) became law, heirs and beneficiaries were treated differently through application of two distinct standards. *See* Note, 36 Tul.L.Rev. 579 (1962) (noting the "anomaly" of treating heirs and beneficiaries differently under Louisiana law for purposes of acquiring property as a result of homicide).

■ A familiar principle of statutory construction is that a statute should not be construed to derogate preexisting law in the absence of an explicit statement of legislative intent. *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952). Louisiana is not a common law state,[8] but its courts are given the power under the Civil Code to decide cases on the basis of equity where there is no positive law. La.Civ.Code Ann. art. 21 (West 1952).[9] In adopting the common law principle that a murderous beneficiary is disqualified from receiving insurance proceeds, and that notwithstanding a criminal conviction a civil court must make its own determination of guilt, Louisiana courts promulgated a substantive rule of decision that operates as law in this state. It should not be wholly discarded on the basis of

§ 22:613(D) absent a clear statement of legislative intent. Although § 2 of Acts 1979, No. 246 repealed "[a]ll laws or parts of law in conflict herewith," this alone is not an explicit statement of legislative intent to abrogate the common law rule. There is not necessarily a conflict between the common law rule and § 22:613(D), since both accomplish the same goal of preventing a wrongdoer from profiting by his crime. To the extent that there is a conflict, in that prior to the enactment of § 22:613(D) Louisiana courts had declined to treat a criminal conviction as conclusive on the issue of guilt, the statute clearly changes the law by making a conviction binding on civil litigants. In addition, it would have been easy for the legislature to have inserted language in § 22:613(D) *restricting* disqualification to those beneficiaries convicted of the insured's homicide. The statute, however, does not declare such a limitation.

Furthermore, even if "final judgment" as used in § 22:613(D) means a criminal conviction, there is ample authority from among the states that have enacted similar statutes[10] that the automatic disqualification of a convicted beneficiary is merely an extension of the common law rule, and not an abrogation of it. By making the fact of conviction conclusive on the issue of guilt,

---

7. In *Succession of Butler*, the court noted that the beneficiary had entered a plea of guilty to the insured's murder and did not receive any other evidence on the issue of criminal liability. However, the court did not indicate that the conviction was binding on the civil litigants as a matter of law, and it appears from the opinion that the parties simply did not contest the fact of guilt. It seems that the same procedure was followed in *Flood v. Fidelity Life Insurance Co.* Although *Flood* was decided after the enactment of § 22:613(D), the opinion does not refer to the statute. Thus, despite its citation of *American National Life Insurance Co. v. Shaddinger* as authority that "Louisiana follows the majority rule" barring a murderous beneficiary from receiving insurance proceeds, 394 So.2d at 1314, the absence of any mention of § 22:613(D) prevents me from regarding this brief passage as instructive on the effect of the statute on the common law rule.

The opinions in *Provident Life & Accident Insurance Co. v. Carter, Davis v. Unity Life Insurance Co., Hollander v. Good Citizens Mu-*

*tual Benefit Association,* and *National Life & Accident Insurance Co. v. Turner* are silent whether criminal charges were brought against the beneficiaries.

8. *See generally* Yiannopoulos, *Louisiana Civil Law: A Lost Cause?*, 54 Tul.L.Rev. 809 (1980).

9. Article 21 states:

In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.

10. *See* Kan.Stat.Ann. § 59–513 (1976); Ken. Rev.Stat. § 381.280 (1972); N.M.Stat.Ann. § 40A–2–10 (1972); N.C.Gen.Stat. § 31A–3 *et seq.* (1976); Ohio Rev.Code Ann. § 2105.19 (1976); Okla.Stat.Ann. tit. 84, § 231 (West Supp.1980); S.C.Code § 21–1–50 (1977); Va. Code § 64.1–18 (1980); W.Va.Code § 42–4–2 (1966).

the law relieves a party from the burden of proving that the homicide was intentional and felonious, but it does not make a conviction the prerequisite to the beneficiary's disqualification. Perhaps the leading case expressing this view is *Smith v. Todd*, 155 S.C. 323, 152 S.E. 506 (1930). In *Smith*, a husband shot and killed his wife, and then committed suicide. A policy of insurance on the wife's life named the husband as the beneficiary. The South Carolina statute, now codified at S.C.Code § 21–1–50 (1977), provided that "no person who shall be convicted in any court of competent jurisdiction of unlawfully killing another person shall receive any benefit from the death of the person unlawfully killed . . . by way of . . . insurance . . . ." The wife's estate, which would take the insurance proceeds if the husband was disqualified as the beneficiary, argued that although the husband was not tried for his wife's death, his suicide having made a prosecution impossible, a finding by the coroner that the husband had feloniously killed the wife was sufficient under the statute to preclude recovery by the husband's estate. The Supreme Court of South Carolina disagreed, finding that as used in the statute, "conviction" did not include a finding by the coroner. On the other hand, the court refused to conclude that because the husband had not, nor could have been, convicted of the crime, his estate was necessarily entitled to the proceeds. Noting that before the statute was enacted South Carolina had adhered to the common law rule which did not depend upon the fact of conviction, but which permitted civil courts to make their own determination of guilt, the court wrote:

> [W]e think the statute is readily and soundly susceptible of the construction that it was the legislative intent, not to abrogate or delimit the common-law rule barring a beneficiary who murders the insured from taking under the policy, but to add to and extend that rule in an important particular not covered by the common law. By its express terms, as we have seen, the statute is limited in operative effect to a person "who shall be convicted in any court of competent juris-

diction of unlawfully killing another person," and its plain primary purpose is to make the fact of such conviction sufficient of itself to establish the legal status of a person so convicted with respect to receiving "any benefit from the death of the person unlawfully killed." There can be no doubt that the statute goes no further than to make such conviction, in and of itself, *determinative of the status of the person convicted with respect to benefits receivable from the death of the person unlawfully killed.*

That, prior to the enactment of this statute, the conviction of a person in the criminal courts of unlawfully killing another did not establish and fix his status in that regard with respect to the vesting, enforcement, and transmission of civil rights derived from and based upon the death of the person killed by him, is well settled. . . .

Hence, although under the general or common law applicable, as we have seen, a person who had unlawfully caused the death of another was not entitled to "receive any benefit" from such death and thus to reap profit from his own wrong or crime, he was not prohibited from receiving such benefits as a person "convicted in a court of competent jurisdiction of unlawfully killing another person." His civil status with respect to property rights predicated upon the death of the person unlawfully killed by him remained unaffected by the judgment of his conviction in the criminal courts, and for the purpose of asserting and enforcing such rights he, or any one claiming under him, was at liberty to have the issue, as to whether he had wrongfully or feloniously caused the death of the other person, tried and adjudicated in a civil action in a different tribunal governed by different rules of evidence, practice, and procedure. By expressly embracing within the prohibition of the law the person so "convicted," it would seem entirely clear that the statute neither expressly nor impliedly abrogated the common-law rule, but merely extended or supplemented it by

making the conviction in the criminal courts a conclusive judicial determination of the convict's status with respect to "receiving any benefit from the death of the person unlawfully killed," invokable and entitled to full faith and credit as such conclusive determination in any controversy, action, or suit involving the succession to or devolution of the estate of the person unlawfully killed.

152 S.E. at 511 (emphasis in the original). The court accordingly ordered a trial on the issue of the husband's criminal responsibility for his wife's death.

Similarly, the Supreme Court of North Carolina construed that state's statute as making a criminal conviction merely one means, but not the sole means, of disqualifying an insurance beneficiary. The North Carolina statute prohibits a "slayer" from receiving the proceeds of a policy on the life of his victim, N.C.Gen.Stat. § 31A–11 (1976), and defines "slayer" as "[a]ny person who by a court of competent jurisdiction shall have been convicted as a principal or accessory before the fact of the willful and unlawful killing of another person." *Id.*, § 31A–3(3). In *Quick v. United Benefit Life Insurance Co.*, 287 N.C. 47, 213 S.E.2d 563 (1975), the beneficiary had been convicted of the involuntary manslaughter of the insured. After concluding that involuntary manslaughter is not a "willful and unlawful killing" within the meaning of the statute, the court considered whether the beneficiary was therefore automatically entitled to receive the insurance proceeds. It decided that she was not.

> Under G.S. § 31A–13, one conclusively establishes the disqualification of the "slayer" by introducing in evidence the record of the proceeding in which the beneficiary was judicially determined to be a slayer as defined by G.S. § 31A–3(3). Thus, in a civil action to determine the right of a beneficiary who has caused the death of an insured to take the proceeds of his life insurance policy, the record of the beneficiary's conviction of a "willful and unlawful killing" would be introduced and admissible in evidence, not to prove guilt, but to prove the conviction as

> a separate relevant fact which would of itself bar the beneficiary from acquiring or retaining the proceeds. No other evidence of the crime than the specified court record would be necessary, and evidence that the "slayer" was not in fact guilty of the crime would be both immaterial and inadmissible. . . .

> In contrast, if the party seeking to disqualify the beneficiary cannot proceed under Chapter 31A—as when the jury in the criminal proceeding finds the wrongdoer guilty of involuntary manslaughter—then his only remaining remedy is to proceed under the common law. In this type of action, G.S. § 31A–13 has no applicability because the alleged wrongdoer has not been determined a "slayer" within the purview of G.S. § 31A–3(3). G.S. § 31A–13 is simply a statutory exception to the universal rule that the record of a conviction in a criminal proceeding is not admissible in a subsequent civil action to prove the guilt or innocence of the person tried. . . .

213 S.E.2d at 569. Because in the court's view the North Carolina statute "preserved the common law both substantively and procedurally," it ruled that the beneficiary could be denied the insurance proceeds even though she was not convicted of the insured's murder. *See also Travelers Insurance Co. v. Gray*, 66 O.O.2d 64, 37 Misc. 27, 306 N.E.2d 189 (1973); *Cook v. Western & Southern Life Insurance Co.*, 30 Ohio N.P. (n.s.) 247 (1932) (relying upon *Smith v. Todd* in construing the Ohio statute); *Metropolitan Life Insurance Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934) (interpreting the West Virginia statute).

There have been decisions holding that a beneficiary must be convicted before he may be disqualified, but they are distinguishable from this case. In *Noller v. Aetna Life Insurance Co.*, 142 Kan. 35, 46 P.2d 22 (1935), the court considered the law currently codified as Kan.Stat.Ann. § 59–513 (1976) which disqualifies as a beneficiary "[a]ny person who shall hereafter be convicted of killing or of conspiring with another to kill or of procuring said killing" of

an insured. The court held that in order to be disqualified, the beneficiary had to be first convicted of the killing. Thus, because in *Noller* the court found that a woman, who may have murdered her husband, had died before being prosecuted for the crime, she could not be precluded from receiving proceeds as the beneficiary under an insurance policy on the husband's life.

> [The statute] only bars the person who did the killing when they [sic] have been convicted of the crime. Appellee makes the point that it is against public policy to permit a person to profit by the killing of another. It is the public policy of this state, as announced by the Legislature, that a person shall not take property from the murdered person in any manner whatsoever, but that they must be convicted of the crime before they are barred. This is the obvious intention of the Legislature in enacting the various statutes to which reference has been made. ·

*Id.* Nevertheless, *Noller* does not control the proper construction of § 22:613(D) for the reason that before the Kansas statute was enacted, the Kansas Supreme Court had refused to prohibit a husband from inheriting his murdered wife's estate, even though he had committed the murder. *McAllister v. Fair*, 72 Kan. 533, 84 P. 112 (1907). Thus, Kansas was apparently one of those few states that did not enforce the common law rule against murderous beneficiaries or heirs. *See* Wade, *Acquisition of Property by Willfully Killing Another—A Statutory Solution*, 49 Harv.L.Rev. 715, 717 (1936). *See also Winters National Bank & Trust Co. v. Shields*, 14 O.O. 438 (1939); *McMichael v. Proctor*, 243 N.C. 479, 91 S.E.2d 231 (1956). The *Noller* court concluded that the Kansas legislature enacted the statute to "cure a situation such as that treated in *McAllister v. Fair*," 46 P.2d at 26, and construed the law as incorporating the necessity for a conviction into the public policy of Kansas. In Louisiana, by contrast, the legislature cannot be said to have written on a clean slate; the prior decisions of Louisiana courts enforcing the common law rule must be taken into account in construing § 22:613(D).

Also distinguishable from § 22:613(D) is the New Mexico law considered by the court in *Rose v. Rose*, 79 N.M. 435, 444 P.2d 762 (1968). That law provided in part:

> [w]here a person, who, by committing murder and where such person is convicted of either a capital, first or second degree felony, and might receive some benefit therefrom either directly or indirectly, the common-law maxim to the effect that one cannot take advantage of his own wrong, shall control and be applied to the interpretation, construction and application of all statutes or decisions of this state in order to deprive and prevent him from profiting from such wrongful acts.

N.M.Stat.Ann. § 40A–2–10 (1972). The court in *Rose* held that the statute did not merely declare the common law rule, nor simply supplement it, but limited its application.

> If the legislature had intended it as merely declaratory of the common law, it would have been easy to have said that one who is convicted of feloniously causing the death of another shall not benefit therefrom [as other states have done]. The legislature, by express and unambiguous language, prohibited only those convicted of murder from so profiting. In this instance, the legislative intent to limit the common-law maxim to one convicted of murder is clear and plain.

444 P.2d at 764. Section 22:613(D), unlike the New Mexico statute, is not limited in its scope to those convicted of murder, but extends to anyone found "criminally responsible" for the death of the insured. Furthermore, the New Mexico Supreme Court in an earlier case found that the common law rule had been abrogated by statute in the context of inheritances, *Reagan v. Brown*, 59 N.M. 423, 285 P.2d 789 (1955), and thus the legislative intent was found by the court to be clearly stated. The intent of § 22:613(D) to overrule cases like *American Life Insurance Co. v. Shaddinger*, however, is not apparent.

■ Even if § 22:613(D) does not make a conviction the predicate for disqualification, Sanford might argue, his acquittal should still conclusively establish his right to the insurance proceeds, since unlike the husband in *Smith* who committed suicide, Sanford's criminal responsibility has been adjudicated. In *Quick*, however, the beneficiary was also acquitted of murder, having been convicted only of involuntary manslaughter, yet the court did not find itself bound by that decision. Moreover, the courts of both South Carolina and North Carolina have held that the statutes of those states are inapplicable when the beneficiary has been acquitted of the crime. *See Legett v. Smith*, 226 S.C. 403, 85 S.E.2d 576, 578 (1955); *Tew v. Durham Life Insurance Co.*, 1 N.C.App. 94, 160 S.E.2d 117 (1968). Nothing in the language of § 22:613(D) indicates that an acquittal has conclusive effect, and of all the states that have enacted statutes in this area,[11] only one has a law affording conclusive effect to an acquittal. *See* Cal. Probate Code Ann. § 258 (West Supp.1981). Significantly, the predecessor statute to § 258 paralleled § 22:613(D). *See* Cal.Probate Code Ann. § 258 (West 1956). In the remaining states, several statutes merely codify the common law rule,[12] and some of those make the record of a conviction admissible as evidence of guilt.[13] Ten states have adopted section 2–803 of the Uniform Probate Code.[14] Paragraph (a) of § 2–803 prohibits an heir from receiving property under a will if he "feloniously and intentionally" killed the decedent, and paragraph (c) similarly disqualifies murderous beneficiaries. Section 2–803(e) states:

A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the Court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section.

The official comment to the section explains:

While conviction in the criminal prosecution under this section treated [sic] as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. Hence it is possible that the defendant on a murder charge may be found not guilty and acquitted, but if the same person claims as an heir or devisee of the decedent, he may in the probate court be found to have feloniously and intentionally killed the decedent and thus be barred under this section from sharing in the estate. An analogy exists in the tax field, where a taxpayer may be acquitted of tax fraud in a criminal prosecution but found to have committed the fraud in a civil proceeding. In many of the cases arising under this section there may be no criminal prosecution because the murderer has committed suicide.

Sanford has cited no case, and my own research has revealed none, in which a beneficiary was permitted to invoke an acquittal to secure his right to insurance proceeds

11. States that have not enacted any statute relating to murderous beneficiaries include Alabama, Arizona, Arkansas, Connecticut, Delaware, Florida, Illinois, Indiana, Maine, Maryland, Massachusetts, Missouri, Nebraska, Nevada, New Hampshire, New York, Vermont, and Wisconsin.

12. *See* Iowa Code Ann. § 633.536 (West 1964); Miss.Code Ann. § 91–1–25 (1973); 20 Pa.Cons. Stat.Ann. § 2106(c) (West 1975); R.I.Gen.Laws 33–1.1–11 (1970); S.D.Compiled Laws Ann. § 29–9–14 (1977); Tenn.Code Ann. § 31–117 (1977); Tex.Ins.Code art. 21.23 (Vernon 1963); Wyo.Stat.Ann. § 2–14–101 (1980).

13. *See* Ga.Code § 56–2506 (1977); Idaho Code § 15–2–803 (Supp.1978); Wash.Rev.Code Ann. §§ 11.84.100, 11.84.130 (1967).

14. *See* Alaska Stat. § 13.11.305 (1972); Colo. Rev.Stat. § 15–11–803 (1974); Haw.Rev.Stat. § 560:2–803 (1976); Mich.Stat.Ann. § 27.5251 [M.C.L.A. § 700.251] (1980); Minn.Stat.Ann. § 524.2–803 (West 1975); Mont.Rev.Code § 91A–2–803 (Supp.1977); N.J.Stat.Ann. § 3A:2A–83 (West Supp.1980); N.D.Cent.Code § 30.1–10–03 (1976); Or.Rev.Stat. §§ 112.515, 112.555 (1979); Utah Code Ann. § 75–2–804 (1978).

on the affirmative ground that he had been found not guilty, rather than simply because of the absence of a conviction. To the contrary, there have been several cases in which courts have disregarded acquittals of beneficiaries. *See, e. g., United States v. Kwasniewski,* 91 F.Supp. 847 (E.D.Mich. 1950) (acquittal based on insanity); *Taylor v. United States,* 113 F.Supp. 143 (W.D.Ark. 1953), *aff'd,* 211 F.2d 794 (8th Cir. 1954) (acquittal based on self-defense); *United States v. Burns,* 103 F.Supp. 690 (D.Md.), *aff'd,* 200 F.2d 106 (4th Cir. 1952) (same). Sanford has not argued that the children may be collaterally estopped from litigating the issue of his sanity, as he clearly could not since they were not represented in the criminal proceeding. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.7, 99 S.Ct. 645, 649 n.7, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). Although Louisiana uses a civil standard of proof for criminal insanity defenses, La. Code Crim.P.Ann. art. 652 (West 1967); *State v. Roy,* 395 So.2d 664 (La.1981); *State v. Weber,* 364 So.2d 952 (La.1978); *State v. Marmillion,* 339 So.2d 788 (La.1976) (defendant must prove insanity by preponderance of evidence), the disparate consequences of a criminal adjudication and a civil proceeding, as well as the constitutional limitations on procedure and evidence in a criminal trial which do not exist in a civil action, make it unlikely that the Louisiana legislature intended that an acquittal have any effect on the civil question of a beneficiary's right to property.

 Accordingly, because § 22:613(D) does not require that a beneficiary be convicted of the felonious and intentional homicide of the insured before he is disqualified to receive the policy proceeds, nor make an acquittal conclusive on the issue of guilt, the children must be permitted to litigate the issue of Sanford's sanity. Sanford's motion for judgment on the pleadings, therefore, is DENIED.[15]

**15.** My construction of § 22:613(D) obviates the need to address another argument raised against Sanford's motion—that Sanford lacked an "insurable interest" in his wife's life because a prior, undissolved marriage rendered their union void for bigamy. *See* Supplemental Memorandum in Opposition to Motion for Judgment on the Pleadings. However, because the children may renew it on a motion for summary judgment or at trial, and because it is meritless, I will address the contention now.

Although one may not take out a policy of life insurance on another person's life unless he possesses an "insurable interest" in that person, La.Rev.Stat.Ann. § 22:613(A) (West 1978),

one may take out a policy on his own life and name anyone else as the beneficiary. *Id.* Mrs. Sanford, and not her husband, took out the policy with Cal-Western. Moreover, the status of the Sanfords' marriage, even if invalid for bigamy as the children allege, has no bearing on Sanford's right to the insurance proceeds. *Cf. Woodson v. Provident Life & Accident Insurance Co.,* 5 So.2d 387 (La.App.1942) (concubine can recover proceeds under policy on mate's life). Therefore, Sanford can be denied the insurance proceeds only if at trial it is found that he was criminally responsible for his wife's death.